# EXHIBIT 4

# U.S. SPECIALTY INSURANCE COMPANY

Directors, Officers and Corporate Liability
Insurance Policy



**HCC Global Financial Products**

8 Forest Park Drive
P.O. Box 4018
Farmington, CT 06034

# U. S. SPECIALTY INSURANCE COMPANY

### DIRECTORS, OFFICERS AND CORPORATE LIABILITY INSURANCE POLICY

#### This is a claims made policy. Please read it carefully.

In consideration of the payment of the premium, and in reliance upon the statements made in the **Application**, including attachments, all of which are made a part hereof and deemed attached hereto, and subject to the Declarations and the limitations, conditions, provisions, any endorsements to and all other terms of this Policy, the Insurer and the **Insureds** agree as follows:

## INSURING AGREEMENTS

(A)     The Insurer will pay to or on behalf of the **Insured Persons Loss** arising from **Claims** first made during the **Policy Period** or **Discovery Period** (if applicable), against the **Insured Persons** for **Wrongful Acts**, except when and to the extent that the **Company** has paid such **Loss** to or on behalf of the **Insured Persons** as indemnification or advancement.

(B)     The Insurer will pay to or on behalf of the **Company Loss** arising from:

      (1)     **Claims** first made during the **Policy Period** or the **Discovery Period** (if applicable) against the **Insured Persons** for **Wrongful Acts**, if the **Company** has paid such **Loss** to or on behalf of the **Insured Persons** as indemnification or advancement, and/or

      (2)     **Securities Claims** first made during the **Policy Period** or the **Discovery Period** (if applicable) against the **Company** for **Wrongful Acts**.

## DEFINITIONS

(A)     **Application** means the application attached to and forming part of this Policy, including any materials submitted in connection with such application, all of which are deemed a part of the Policy.

(B)     **Claim** means:

      (1)     any written demand for monetary or non-monetary relief,

      (2)     any civil proceeding commenced by service of a complaint or similar pleading,

      (3)     any arbitration, mediation or other similar dispute resolution proceeding,

      (4)     any criminal proceeding commenced by return of an indictment,

      (5)     the receipt by an **Insured Person** of a target letter or similar document in connection with a criminal investigation of such **Insured Person**, or

      (6)     any administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document;

including any appeal from any such proceeding.

(C)     **Company** means the **Named Corporation** and any **Subsidiary** thereof.

(D)     **Defense Costs** means reasonable fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond) resulting from the investigation,

adjustment, defense or appeal of a **Claim** against an **Insured Person** (or, with respect to **Securities Claims**, against any **Insured**), but excluding salaries, wages, benefits or overhead expenses of directors, officers or employees of the **Company**.

(E)  **Insured** means the **Insured Persons** and the **Company**.

(F)  **Insured Person** means:

   (1)  any past, present or future director or officer of the **Company**, including any person in a position which is the functional equivalent of a director or officer with respect to any entity included within the definition of **Company** or **Outside Entity** located outside the United States, and

   (2)  with respect only to **Securities Claims**, any past, present or future employee of the **Company**.

(G)  **Loss** means **Defense Costs** and any damages, settlements, judgments or other amounts (including punitive or exemplary damages and the multiplied portion of any multiplied damage award, if and where insurable by law) that:

   (1)  an **Insured Person** is legally obligated to pay as a result of any **Claim**, or

   (2)  the **Company** is legally obligated to pay as a result of any **Securities Claim**;

   provided, that **Loss** will not include wages, fines, taxes or penalties or matters which are uninsurable under the law pursuant to which this Policy is construed. For purposes of determining whether punitive or exemplary damages or the multiplied portion of any multiplied damage award arising from any **Claim** shall be insurable by law, the Insurer agrees to abide by the law of whichever jurisdiction is applicable to such **Claim** and is most favorable to the **Insureds** in that regard.

(H)  **Named Corporation** means the entity designated as such in Item 1 of the Declarations.

(I)  **No Liability** means all defendant **Insureds** obtain by reason of a motion to dismiss, motion for summary judgment or trial a final non-appealable judgment in their favor.

(J)  **Outside Capacity** means service by an **Insured Person** as a director, officer, trustee, regent or governor of, or in another equivalent executive position with respect to, an **Outside Entity**, during such time that such service is at the request of the **Company**.

(K)  **Outside Entity** means any not-for-profit corporation, association, organization or entity.

(L)  **Policy Period** means the period set forth in Item 2 of the Declarations, subject to prior termination or cancellation pursuant to CONDITION (E).

(M)  **Pollutants** means any seepage, pollution or contamination, including but not limited to any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste, and materials to be recycled, reconditioned or reclaimed.

(N)  **Securities Claim** means a **Claim** which:

   (1)  is brought by or on behalf of one or more securities holders of the **Company** in their capacity as such, or

   (2)  arises from the purchase or sale of, or offer to purchase or sell, any securities issued by the **Company**, whether such purchase, sale or offer involves a transaction with the **Company** or occurs in the open market.

(O)  **Subsidiary** means any entity:

    (1)  during any time on or before the inception of the **Policy Period** in which the **Named Corporation** owns or owned more than 50% of the issued and outstanding securities representing the right to vote for the election of such entity's directors (or the legal equivalent thereof), either directly or indirectly through one or more other **Subsidiaries**; or

    (2)  created or acquired during the **Policy Period** during any time in which, as a result of such creation or acquisition, the **Named Corporation** owns more than 50% of the issued and outstanding securities representing the right to vote for the election of such entity's directors (or the legal equivalent thereof), either directly or indirectly through one or more other **Subsidiaries**.

An entity ceases to be a **Subsidiary** when the **Named Corporation** ceases to own more than 50% of its issued and outstanding securities representing the right to vote for the election of such entity's directors (or the legal equivalent thereof), either directly or indirectly through one or more other **Subsidiaries**. The coverage afforded under this Policy with respect to **Claims** against a **Subsidiary** or any **Insured Person** thereof will apply only in respect of **Wrongful Acts** committed or allegedly committed after the effective time that such entity becomes a **Subsidiary** and prior to the time that such entity ceases to be a **Subsidiary**.

(P)  **Wrongful Act** means any:

    (1)  actual or alleged act, error, misstatement, misleading statement, omission or breach of duty:

        (a)  by an **Insured Person** in his or her capacity as such, including in an **Outside Capacity**, or

        (b)  with respect only to **Securities Claims**, by the **Company**; or

    (2)  matter claimed against an **Insured Person** solely by reason of his or her service in such capacity or in an **Outside Capacity**.

## EXCLUSIONS

Unless otherwise specifically stated or provided for in CONDITION (D)(2) or elsewhere in this Policy, the Insurer will not be liable to make any payment of **Loss** in connection with a **Claim**:

(A)  arising out of based upon or attributable to the gaining by any **Insured** of any profit or advantage to which such **Insured** was not legally entitled; provided, that this EXCLUSION (A) will apply only if there has been a final adjudication adverse to such **Insured** establishing that the **Insured** gained such a profit or advantage;

(B)  arising out of, based upon or attributable to the commission by any **Insured** of any criminal or deliberately fraudulent or dishonest act; provided, that this EXCLUSION (B) will apply only if there has been a final adjudication adverse to such **Insured** establishing that the **Insured** so acted;

(C)  for any actual or alleged bodily injury, sickness, mental anguish, emotional distress, disease or death of any person or damage to or destruction of any tangible property, including the loss of use thereof, or for injury from any actual or alleged libel, slander, defamation or disparagement or violation of a person's right of privacy; provided, that this EXCLUSION (C) will not apply to **Securities Claims**;

(D)  for the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants** or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**; provided, that this EXCLUSION (D) will not apply to **Securities Claims**;

(E)     for any actual or alleged violation of the Employee Retirement Income Security Act of 1974 or any regulations promulgated thereunder or of any similar law or regulation;

(F)     brought by or on behalf of, or in the name or right of, the **Company**, whether directly or derivatively, or any **Insured Person**, unless such **Claim** is:

    (1)     brought and maintained independently of, and without the solicitation, assistance or active participation of, the **Company** or any **Insured Person**, or

    (2)     for an actual or alleged wrongful termination of employment, or

    (3)     brought or maintained by an **Insured Person** for contribution or indemnity and directly results from another **Claim** covered under this Policy, or

    (4)     brought and maintained by an employee of the **Company** solely to enforce his or her rights as a holder of securities issued by the **Company**;

    provided, that this EXCLUSION (F) will not apply to **Claims** brought by a trustee in bankruptcy, receiver, conservator, rehabilitator, liquidator or other similar official duly appointed with respect to the **Company**;

(G)     by or on behalf of, or in the name or right of, any **Outside Entity**, whether directly or derivatively, against an **Insured Person** for a **Wrongful Act** in his or her **Outside Capacity** with respect to such **Outside Entity**, unless such **Claim** is brought and maintained independently of, and without the solicitation, assistance or active participation of, the **Outside Entity**, the **Company** or any **Insured Person**;

(H)     arising out of, based upon or attributable to facts or circumstances alleged, or to the same or related **Wrongful Acts** alleged or contained, in any claim which has been reported, or with respect to which any notice has been given, under any policy of which this Policy is a renewal or replacement or which it may succeed in time; or

(I)     arising out of, based upon or attributable to any pending or prior litigation as of the inception date of this Policy, or alleging or derived from the same or essentially the same facts or circumstances as alleged in such pending or prior litigation.

For purposes of determining the application of the above EXCLUSIONS, no **Wrongful Act** of any **Insured Person** will be imputed to any other **Insured Person** who did not have actual knowledge of, or directly participate in the commission of, such **Wrongful Act** and, except for **Wrongful Acts** of the **Company's** chairman of the board, chief executive officer, president, chief financial officer or general counsel, no **Wrongful Act** of any **Insured Person** will be imputed to the **Company**.

DISCOVERY PERIOD

If the Insurer or the **Named Corporation** fails or refuses to renew this Policy or if the **Named Corporation** cancels this Policy, any **Insured** will have the right, upon payment of the Discovery Period Premium set forth in Item 7(a) of the Declarations, to an extension of the coverage granted by this Policy for the period set forth in Item 7(b) of the Declarations following the effective date of such cancellation or non-renewal (the "Discovery Period"), but only with respect to any **Wrongful Act** actually or allegedly taking place before the date of such cancellation or non-renewal. A written request for this extension, together with payment of the Discovery Period Premium, must be made within thirty (30) days after the effective date of cancellation or non-renewal of the Policy. Such Discovery Period Premium will be deemed to be fully earned as of the inception of the Discovery Period. This clause and the right contained within will not apply if this Policy is terminated by the Insurer for failure to pay any premium when due.



**U.S. SPECIALTY INSURANCE COMPANY**

EXTENSIONS

(A)     Subject to its terms and conditions, this Policy will afford coverage for **Claims** for **Wrongful Acts** of an **Insured Person** if such **Claims** are made against the estates, heirs, legal representatives or assigns of an **Insured Person** who is deceased or against the legal representatives or assigns of an **Insured Person** who is incompetent, insolvent or bankrupt, to the extent that such **Claims** would have been covered by this Policy in the absence of such death, incompetence, insolvency or bankruptcy.

(B)     Subject to its terms and conditions, this Policy will afford coverage for **Claims** for **Wrongful Acts** of an **Insured Person** if such **Claims** are made against the **Insured Person's** lawful spouse solely by reason of such spouse's legal status as a spouse of the **Insured Person** or such spouse's ownership interest in property which the claimant seeks as recovery for alleged **Wrongful Acts** of the **Insured Person**. For purposes of the Policy, amounts which such spouse becomes legally obligated to pay by reason of such **Claim** will be treated as **Loss** which the **Insured Person** is legally obligated to pay on account of the **Claim** made against the **Insured Person**. This coverage extension does not apply, however, to the extent the **Claim** alleges any wrongful act or omission by the **Insured Person's** spouse.

CONDITIONS

(A)     Limit of Liability and Retention

(1)     The Insurer's maximum aggregate liability for all **Loss** on account of all **Claims** first made during the same **Policy Period**, whether covered under one or more INSURING AGREEMENTS, will not exceed the Limit of Liability set forth in Item 3 of the Declarations.

(2)     Defense Costs will be part of and not in addition to the Limit of Liability, and payment of **Defense Costs** will reduce the Limit of Liability. **Defense Costs**, as incurred, will also be applied against the retention.

(3)     The retention stated in Item 4(b) of the Declarations will apply to **Loss**, including **Defense Costs**, which the **Company** is required or permitted to pay as indemnification or advancement to or on behalf of the **Insured Persons**, whether or not such **Loss** is actually paid, unless the **Company** is unable to pay such **Loss** as indemnification or advancement solely by reason of its financial insolvency. For purposes of this CONDITION (A)(3), the certificate of incorporation, charter, articles of association or other organizational documents of the **Named Corporation**, each **Subsidiary** and each **Outside Entity**, including the bylaws and resolutions thereof, will be deemed to have been adopted or amended to provide indemnification and advancement to the **Insured Persons** to the fullest extent permitted by law.

(4)     The Insurer will be liable only for the amount of **Loss** in connection with any **Claim**, which is in excess of the applicable retention stated in Item 4 of the Declarations. Such retention is to be borne by the **Insureds** and remain uninsured. A single retention will apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or related **Wrongful Acts**.

(5)     Notwithstanding the foregoing, with respect to **Securities Claims** the retentions stated in Items 4(b) and 4(c) of the Declarations will apply only to **Defense Costs**; provided, that if a **Securities Claim** is finally resolved by a determination of **No Liability**, no retention will apply to such **Securities Claim** even as respects **Defense Costs** and the Insurer will thereupon reimburse **Defense Costs** within the retention which shall already have been paid by the **Insureds**.

(6)     One retention amount will apply to the covered portion of each and every single **Claim**. If a single **Claim** is covered under more than one INSURING AGREEMENT, the

retentions stated in Item 4 of the Declarations will be applied separately to the portions of the **Claim** covered by each INSURING AGREEMENT, and the sum of the retentions so applied will constitute the retention for each single **Claim**, which in total will not exceed the largest of the applicable retentions.

(B)   Notice of Claims and Reporting Provisions

    (1)   The **Insureds** must, as a condition precedent to the obligations of the Insurer under this Policy, give written notice, including full details, to the Insurer of any **Claim** as soon as practicable after it is made.

    (2)   If written notice of a **Claim** has been given to the Insurer pursuant to CONDITION (B)(1) above, then any **Claim** subsequently made against the **Insureds** and reported to the Insurer alleging, arising out of, based upon or attributable to the facts alleged in the **Claim** of which such notice has been given, or alleging any **Wrongful Act** which is the same as or related to any **Wrongful Act** alleged in the **Claim** of which such notice has been given, will be considered to have been made at the time such notice was given.

    (3)   If, during the **Policy Period** or the Discovery Period (if applicable), the **Insureds** become aware of any circumstances which may reasonably be expected to give rise to a **Claim** against the **Insureds** and if, before the end of the **Policy Period** or the Discovery Period (if applicable), the **Insureds** give written notice to the Insurer of the circumstances and the reasons for anticipating such a **Claim**, with full particulars as to dates, persons and entities involved, potential claimants and the consequences which have resulted or may result from such **Wrongful Act**, then any **Claim** subsequently made against the **Insureds** and reported to the Insurer alleging, arising out of, based upon or attributable to such circumstances or alleging any **Wrongful Act** which is the same as or related to any **Wrongful Act** described in such notice will be considered to have been made at the time such notice of circumstances was given.

    (4)   All notices under this CONDITION (B) must refer to the Policy Number, must be in writing, must request coverage under this Policy, and must be given by certified mail or prepaid express courier to the address set forth in Item 6 of the Declarations.

(C)   Interrelationship of Claims

All **Claims** alleging, arising out of, based upon or attributable to the same facts, circumstances, situations, transactions or events or to a series of related facts, circumstances, situations, transactions or events will be considered to be a single **Claim** and will be considered to have been made at the time the earliest such **Claim** was made.

(D)   Defense Costs, Settlements, Allocation of Loss, Priority of Payments

    (1)   The Insurer will have no duty under this Policy to defend any **Claim**. The **Insureds** must defend any **Claim** made against them. The **Insureds** may not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any **Defense Costs** without the Insurer's prior written consent. Only those settlements, stipulated judgments and **Defense Costs** to which the Insurer has consented will be recoverable as **Loss** under this Policy. The Insurer's consent may not be unreasonably withheld; provided, that the Insurer will be entitled to effectively associate in the defense and the negotiation of any settlement of any **Claim**.

    (2)   The Insurer will pay covered **Defense Costs** on an as-incurred basis. If it is finally determined that any **Defense Costs** paid by the Insurer are not covered under this Policy, the **Insureds** agree to repay such non-covered **Defense Costs** to the Insurer.

    (3)   If **Loss** covered by this Policy and loss not covered by this Policy are both incurred in connection with a single **Claim**, either because the **Claim** includes both covered and

uncovered matters, or because the **Claim** is made both against **Insured Persons** (or, with respect only to **Securities Claims**, against **Insureds**) and against others not included within the definition of **Insured Person** (or, with respect only to **Securities Claims**, the definition of **Insured**), the **Insureds** and the Insurer agree to use their best efforts to determine a fair and proper allocation of all such amounts, taking into account the relative legal and financial exposures of the parties to the **Claim** and the relative benefits to be obtained by the resolution of the **Claim**. The Insurer will be obligated to pay only those amounts or portions of **Loss** allocated to covered matters claimed against **Insured Persons** (or, with respect only to **Securities Claims**, against **Insureds**). If the **Insureds** and the Insurer are unable to agree upon an allocation, then until a final allocation is agreed upon or determined pursuant to the provisions of this Policy and applicable law, the Insurer will be obligated to make an interim payment of that amount or portion of **Loss**, including **Defense Costs**, which the parties agree is not in dispute.

(4)     If the Insurer is obligated to pay **Loss**, including **Defense Costs**, under more than one INSURING AGREEMENT, whether in connection with a single **Claim** or multiple **Claims**, the Insurer will first pay any **Loss** payable under INSURING AGREEMENT (A) and, if the Insurer concludes that the amount of all **Loss**, including **Defense Costs**, is likely to exceed the Insurer's Limit of Liability, the Insurer shall be entitled to withhold some or all of any **Loss** payable under INSURING AGREEMENT (B)(1) or (B)(2) to ensure that as much of the Limit of Liability as possible is available for the payment of **Loss** under INSURING AGREEMENT (A). If no **Loss** is payable under INSURING AGREEMENT (A), or if the Insurer's obligations under INSURING AGREEMENT (A) have been satisfied, then, subject to the Insurer's Limit of Liability as set forth in Item 3 of the Declarations, the Insurer will pay such **Loss** as it is required to pay under INSURING AGREEMENT (B)(1) or (B)(2) in such manner and, in the event of multiple **Claims**, apportioned among such **Claims** as the **Named Corporation** shall direct in writing.

(E)     <u>Cancellation or Nonrenewal</u>

(1)     The Insurer may cancel this Policy for non-payment of premium by sending not less than ten (10) days notice to the **Named Corporation** at its last known address. The Insurer may not otherwise cancel this Policy.

(2)     The **Named Corporation** may cancel this Policy by mailing the Insurer written notice stating when such cancellation will be effective; provided, that the **Named Corporation** may not cancel this Policy after the effective date of any acquisition of the **Named Corporation** as described in CONDITION (F) below. If the **Named Corporation** cancels this Policy, the Insurer will retain the customary short rate premium. Premium adjustment may be made either at the time cancellation is effective or as soon as practicable after cancellation becomes effective, but payment of unearned premium is not a condition of cancellation.

(3)     If the Insurer elects not to renew this Policy, the Insurer must give the **Named Corporation** notice of non-renewal no less than sixty (60) days before the end of the **Policy Period**.

(4)     If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period will be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

(F)     <u>Changes in Control</u>

(1)     If, during the **Policy Period**, any of the following transactions or events (each a "Change in Control") occurs with respect to the **Named Corporation**:

    (a)    the **Named Corporation** merges into or consolidates with another entity such that the **Named Corporation** is not the surviving entity, or

    (b)    another entity, person or group of entities and/or persons acting in concert acquires securities or voting rights which result in ownership or voting control by the other entity(ies) or person(s) of more than 50% of the outstanding securities representing the present right to vote for the election of directors of the **Named Corporation**, or

    (c)    a trustee in bankruptcy, receiver, conservator, rehabilitator, liquidator or other similar official is duly appointed with respect to the **Named Corporation**;

then coverage under this **Policy** will continue in full force and effect until the end of the **Policy Period** with respect to **Claims** for **Wrongful Acts** committed or allegedly committed before the effective date of such Change in Control, but coverage will cease with respect to **Claims** for **Wrongful Acts** committed or allegedly committed thereafter and the premium will be considered fully earned in consideration of the coverage extended.

(2)    If, during the **Policy Period**, any of the following transactions or events (each a "Change in Control") occurs with respect to a **Subsidiary**:

    (a)    the **Subsidiary** ceases to be a **Subsidiary**, or

    (b)    a trustee in bankruptcy, receiver, conservator, rehabilitator, liquidator or other similar official is duly appointed with respect to the **Subsidiary**;

then coverage under this **Policy** with respect to **Claims** against such **Subsidiary** or any **Insured Person** thereof will continue in full force and effect until the end of the **Policy Period** with respect to **Claims** for **Wrongful Acts** committed or allegedly committed before the effective date of such Change in Control, but coverage under this **Policy** with respect to **Claims** against such **Subsidiary** or any **Insured Person** thereof will cease with respect to **Claims** for **Wrongful Acts** committed or allegedly committed thereafter.

(G)    <u>Other Insurance and Other Indemnification</u>

(1)    Such insurance as is provided by this **Policy** will apply only as excess over and will not contribute with any other valid and collectible insurance.

(2)    All coverage for **Loss** from **Claims** against **Insured Persons** for **Wrongful Acts** in their **Outside Capacities** will be specifically excess of, and will not contribute with,

    (a)    any other insurance available to such **Insured Persons** by reason of their service in **Outside Capacities**, and

    (b)    any indemnification available to such **Insured Persons** in connection with their service in **Outside Capacities** from any source other than the **Company**, including but not limited to **Outside Entities**.

(H)    <u>Cooperation and Subrogation</u>

(1)    In the event of any notice under CONDITION (B) of a **Claim** or of circumstances which may reasonably be expected to give rise to a **Claim**, the **Insureds** will give the **Insurer** all information, assistance and cooperation that the **Insurer** may reasonably request with respect thereto.

(2)    In the event of any payment under this **Policy**, the **Insurer** will be subrogated to the extent of such payment to all of the **Insureds'** rights of recovery, including without limitation

the Insured Persons' rights to indemnification or advancement from the **Company**. The **Insureds** must execute all papers required and do everything necessary to secure such rights and to enable the Insurer to bring suit in their name.

(I) <u>No Action against the Insurer</u>

No action may be taken against the Insurer unless, as a condition precedent thereto, there has been full compliance with all of the terms of this Policy and until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment against an **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the Insurer. No person or organization will have any right under this Policy to join the Insurer as a party to any action against the **Insureds** to determine the Insurer's liability; nor may the Insurer be impleaded by the **Insureds** or their legal representatives in any such action.

(J) <u>Notices and Authority</u>

By acceptance of this Policy, the **Insureds** agree that the **Named Corporation** may act on behalf of all **Insureds** with respect to the giving and receiving of any notices, the payment of premiums and the receiving of any return premium, the cancellation or renewal of this Policy and the acceptance of any amendments thereto.

(K) <u>Assignment</u>

No assignment of interest under this Policy will bind the Insurer without the Insurer's written consent.

(L) <u>Titles and Headings</u>

The titles and headings to the various paragraphs and sections in this Policy, including endorsements attached, are included solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions of such paragraphs and sections to which they relate.

(M) <u>Representations and Severability</u>

The **Insureds** represent that the particulars and statements contained in the **Application** are true, accurate and complete and are deemed material to the acceptance of the risk assumed by the Insurer under this Policy. This Policy is issued in reliance upon the truth of such representations. No knowledge or information possessed by any **Insured** will be imputed to any other **Insured** except for material facts or information known to the person or persons who signed the **Application**. If any of the particulars or statements in the **Application** is untrue, this Policy will be void with respect to any **Insured** who knew of such untruth or to whom such knowledge is imputed.

(N) <u>Changes</u>

Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Insurer will not effect a waiver or a change in any part of this Policy or stop the Insurer from asserting any right under the terms of this Policy. This Policy cannot be waived or changed, except by written endorsement issued to form a part of this Policy.

(O) <u>Entire Agreement</u>

By acceptance of this Policy, the **Insureds** and the Insurer agree that this Policy (including the **Application** and any materials submitted therewith) and any written endorsements attached hereto constitute the entire agreement between the parties with respect to this insurance.

**U.S. SPECIALTY INSURANCE COMPANY**

(P)    Territory

This Policy applies to **Wrongful Acts** actually or allegedly taking place or **Claims** made anywhere in the world.

(Q)    Conformity to Statute

Any terms of this Policy which are in conflict with the terms of any applicable laws construing this Policy, including any endorsement to this Policy which is required by any state Department of Insurance (or equivalent authority) ("State Amendatory Endorsement"), are hereby amended to conform to such laws. Nothing herein will be construed to restrict the terms of any State Amendatory Endorsement. In addition, to the extent permissible by law, nothing in any State Amendatory Endorsement will be construed to restrict the terms of this Policy.

In witness whereof the Insurer has caused this Policy to be executed by its authorized officers, but this Policy will not be valid unless countersigned on the Declarations Page by a duly authorized representative of the Insurer.

Secretary                          President

# U.S. SPECIALTY INSURANCE COMPANY
## Houston, Texas

NOTICE: THIS IS A CLAIMS MADE POLICY WHICH APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR, IF APPLICABLE, THE DISCOVERY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED, AND MAY BE EXHAUSTED, BY THE PAYMENT OF DEFENSE COSTS. DEFENSE COSTS WILL BE APPLIED AGAINST THE RETENTION. THE INSURER HAS NO DUTY UNDER THE POLICY TO DEFEND ANY INSURED.

## DECLARATIONS

### DIRECTORS, OFFICERS AND CORPORATE LIABILITY INSURANCE POLICY

POLICY NUMBER: 14-MGU-09-A18651          RENEWAL OF: N/A

| | | |
|---|---|---|
| ITEM 1. | **NAMED CORPORATION:** | Point Blank Solutions, Inc.<br>2102 SW 2nd Street<br>Pompano Beach, FL 33069 |

ITEM 2.     **POLICY PERIOD:**
(a) Inception Date: 3/28/2009
(b) Expiration Date: 3/28/2010
at 12:01 a.m. at the Principal Address stated in Item 1.

ITEM 3.     **LIMIT OF LIABILITY** (inclusive of Defense Costs):
$20,000,000 in the aggregate for all INSURING AGREEMENTS combined.

ITEM 4.     **RETENTIONS:**
(a) INSURING AGREEMENT A:     $0 or minimum required under applicable law, if any
(b) INSURING AGREEMENT B(1):    $250,000 for Loss arising from Claims alleging the same Wrongful Act or related Wrongful Acts (waivable under the circumstances described in CONDITION (A)(5))
(c) INSURING AGREEMENT B(2):    $500,000 for Loss arising from Claims alleging the same Wrongful Act or related Wrongful Acts (waivable under the circumstances described in CONDITION (A)(5))

ITEM 5.     **PREMIUM:** $297,500.00

ITEM 6.     **NOTICES REQUIRED TO BE GIVEN TO THE INSURER MUST BE ADDRESSED TO:**
HCC GLOBAL FINANCIAL PRODUCTS
P.O. Box 4018
Farmington, CT 06034
Attention: Claims Manager

ITEM 7.     **DISCOVERY PERIOD:**
(a) Premium: 150% of the annual Premium.
(b) Duration: 365 days

ITEM 8.     **ENDORSEMENTS ATTACHED AT ISSUANCE:**
2100C-FL 991-301 991-315 991-319 991-335 991-336 991-342 991-420 991-442 991-443 991-450 991-454 991-456 991-473 991-477 991-478 991-600 991-700 991-726 991-727 991-728 991-732 991-804 991-819 991-828 991-830 991-853 991-861 991-874 991-893 80016

IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed on the Declarations Page by its President, a Secretary and a duly authorized representative of the Insurer.

        Secretary                  President                      Authorized Representative

Date: March 17, 2009                                       USSIC-990 (04/2002)

# U.S. SPECIALITY INSURANCE COMPANY

## ENDORSEMENT NUMBER: 1

## FLORIDA AMENDATORY ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on 3/28/2009, forms part of Policy No. 14-MGU-09-A18651, issued to Point Blank Solutions, Inc. by U.S. Specialty Insurance Company:

In consideration of the premium charged:

(1)     CONDITION (E), <u>Cancellation or Nonrenewal</u>, is amended by adding the following:

   (5).     Any notice of cancellation or nonrenewal shall state the reason(s) therefor.

(2)     DEFINITIONS, **Loss**, is amended by adding the following:

   Punitive damages are not insurable under Florida law.

(3)     The Policy is amended by adding the following:

   If an **Insured** has an inquiry or wishes to obtain information as to the coverage available under this Policy, or if an **Insured** wishes to obtain assistance in resolving complaints, such **Insured** may direct the inquiry or request for information to the Company by contacting HCC Global Financial Products, LLC, P.O. Box 4018, Farmington, Connecticut 06034. Phone: (877) 624-6289 Fax: (860) 676-1737. If an **Insured** wishes to obtain assistance in resolving complaints, such **Insured** may contact the Insurer directly at Phone: (888) 688-0775.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

## EMPLOYMENT PRACTICES LIABILITY EXTENSION (NON-ENTITY)

To be attached to and made a part of Policy No. 14-MGU-09-A18651, issued to
Point Blank Solutions, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged it is hereby understood and agreed that:

(1)     DEFINITION (P) **Wrongful Act** is amended to include any **Employment Practices Wrongful Act** by an **Insured Person** in his or her capacity as such.

(2)     DEFINITION (F) **Insured Person**, subsection (2) is amended to read:

(2)     with respect only to **Securities Claims** and **Claims** for **Employment Practices Wrongful Acts**, any past, present or future employee of the **Company**.

(3)     The following DEFINITIONS are added to the Policy:

**Discrimination** means:

(1)     any failure or refusal to hire, failure or refusal to promote, demotion or discharge of, or wrongful failure to grant tenure to, any person, or

(2)     any limitation, segregation or classification of any employee or applicant for employment in any way that would deprive or tend to deprive any person of employment opportunities or otherwise adversely affect his or her status as an employee;

because of such person's race, color, age, sex, disability, pregnancy, sexual orientation or preference, national origin, religion, or other status that is protected pursuant to any applicable federal, state or local statute or ordinance.

**Employment Practices Wrongful Act** means any actual or alleged:

(1)     **Discrimination,**
(2)     **Retaliation,**
(3)     **Sexual Harassment,**
(4)     **Workplace Harassment,**
(5)     **Workplace Tort,** or
(6)     **Wrongful Termination.**

**Retaliation** means retaliatory treatment against an employee of the **Company** on account of such employee's exercise or attempted exercise of his or her rights under law.

**Sexual Harassment** means unwelcome sexual advances, requests for sexual favors, or other verbal, visual or physical conduct of a sexual nature that is made a condition of employment with the **Company**, is used as a basis for employment decisions by the **Company**, creates a work environment with the **Company** that interferes with performance, or creates an intimidating, hostile or offensive working environment.

**Workplace Harassment** means conduct that creates a work environment with the **Company** that interferes with performance, or creates an intimidating, hostile or offensive working environment.

**Workplace Tort** means misrepresentation, defamation (including libel and slander), invasion of privacy, false imprisonment, negligent evaluation, negligent training or supervision, wrongful discipline or wrongful deprivation of career opportunity, if actually or allegedly related to the claimant's employment by the **Company**.

**Wrongful Termination** means actual or constructive termination of the employment of, or demotion of, or failure or refusal to promote, any employee, which is in violation of law, against public policy or in breach of an implied agreement to continue employment.

(4)     EXCLUSION (C) will not apply to **Loss** for mental anguish, emotional distress, libel, slander, defamation or disparagement or violation of a person's right of privacy caused by an **Employment Practices Wrongful Act**.

(5)     EXCLUSION (F), subsection (2) is amended to read as follows:

(2)     for an actual or alleged **Employment Practices Wrongful Act**;

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
                    Attorney-in-Fact

ENDORSEMENT NUMBER: 3

**AMEND "INSURED PERSONS"**

To be attached to and made a part of Policy No. 14-MGU-09-A18651, issued to Point Blank Solutions, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, DEFINITION (F) **Insured Person** is deleted in its entirety and replaced by the following:

    (F)    **Insured Persons** means:

        (1)    any past, present or future director or officer of the **Company**, including any person in a position which is the functional equivalent of a director or officer with respect to any entity included within the definition of **Company** or **Outside Entity** located outside the United States, and

        (2)    any past, present or future employee of the **Company**, but only with respect to:

            (i)    **Securities Claims; or**

            (ii)    any other **Claim**, provided that, and only for so long as, such **Claim** is also made and maintained against at least one other **Insured**.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

            By: _____
                        Attorney-in-Fact



## AMEND "LOSS" TO INCLUDE PRE-JUDGMENT
## AND POST-JUDGMENT INTEREST

To be attached to and made a part of Policy No. 14-MGU-09-A18651, issued to
Point Blank Solutions, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, DEFINITION (G) **Loss** is amended to read as follows:

(G)     **Loss** means **Defense Costs** and any damages, settlements, judgments, pre-judgment
interest, post-judgment interest, or other amounts (including punitive or exemplary
damages and the multiplied portion of any multiplied damage award, if and where
insurable by law) that:

(1)     an **Insured Person** is legally obligated to pay as a result of any **Claim**,
or

(2)     the **Company** is legally obligated to pay as a result of any **Securities
Claim**;

provided, that **Loss** will not include wages, fines, taxes or penalties or matters which are
uninsurable under the law pursuant to which this Policy is construed.  For purposes of
determining whether punitive or exemplary damages or the multiplied portion of any
multiplied damage award arising from any **Claim** shall be insurable by law, the Insurer
agrees to abide by the law of whichever jurisdiction is applicable to such **Claim** and is
most favorable to the **Insureds** in that regard.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective
with the Policy.

Effective date of this endorsement:

By: _____
        Attorney-in-Fact

**AMEND DEFINITION OF APPLICATION**

To be attached to and made a part of Policy No. 14-MGU-09-A18651, issued to Point Blank Solutions, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that DEFINITION (A) is amended to read in its entirety as follows:

(A)     **Application** means the application attached to and forming part of this Policy, including any materials submitted in connection with such application, and any documents filed by the **Company** with the Securities and Exchange Commission during the 12-month period preceding inception of this Policy, all of which are deemed a part of the Policy.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
                       Attorney-in-Fact

**EXTRADITION COVERAGE ENDORSEMENT**

To be attached to and made a part of Policy No. 14-MGU-09-A18651, issued to Point Blank Solutions, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that:

(1)    The DEFINITIONS section of this Policy is amended to include the following:

        **Extradition** means any formal process by which an **Insured Person** is surrendered from one country to another country to face a criminal trial (or otherwise answer a criminal accusation) in connection with his or her actual or alleged **Wrongful Acts.**

(2)    Where permitted by law:

        (a)    DEFINITION (B) **Claim** is amended to include:

            (i)    any official request for **Extradition** of an **Insured Person**; or

            (ii)    the execution of a warrant for the arrest of an **Insured Person** where such execution is an element of **Extradition.**

        (b)    DEFINITION (D) **Defense Costs** is amended to include reasonable legal fees, costs and expenses consented to by the Insurer resulting from an **Insured Person's** lawful:

            (i)    opposition or challenge to or defense against the **Extradition** of such **Insured Person;** or

            (ii)    appeal of an order granting **Extradition** of such **Insured Person.**

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

    Effective date of this endorsement:

          By: _____
                     Attorney-in-Fact

ENDORSEMENT NUMBER: 7

**AMEND DEFINITION OF CLAIM**

To be attached to and made a part of Policy No. 14-MGU-09-A18651, issued to Point Blank Solutions, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that subsection (5) of DEFINITION (B) **Claim** is deleted and replaced with the following:

    (5)    the receipt by an **Insured Person** of a target letter or similar document, including a subpoena, in connection with an investigation of such **Insured Person**, or

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
                     Attorney-in-Fact





ENDORSEMENT NUMBER: 8

## SPLIT PRIOR & PENDING LITIGATION EXCLUSION

To be attached to and made a part of Policy No. 14-MGU-09-A18651, issued to Point Blank Solutions, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, EXCLUSION (I) is deleted in its entirety and replaced with the following:

(1)     With respect to the first $15,000,000 of the limit of liability, the Insurer shall not be liable to make any payment of Loss in connection with any Claim arising out of, based upon or attributable to any pending or prior litigation as of 3/28/2002, or alleging or derived from the same or essentially the same facts or circumstances as alleged in such pending or prior litigation.

(2)     With respect to the $5,000,000 excess of first $15,000,000 of the limit of liability, the Insurer shall not be liable to make any payment of Loss in connection with any Claim arising out of, based upon or attributable to any pending or prior litigation as of 3/28/2006, or alleging or derived from the same or essentially the same facts or circumstances as alleged in such pending or prior litigation.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
                Attorney-in-Fact

## AMEND POLLUTION EXCLUSION ENDORSEMENT
### (A-SIDE CARVEBACK)

To be attached to and made a part of Policy No. 14-MGU-09-A18651, issued to Point Blank Solutions, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that EXCLUSION (D) of this Policy is amended to read in its entirety as follows:

(D)      for the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants** or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**; provided, that this EXCLUSION (D) will not apply to **Securities Claims**; provided further, that this EXCLUSION (D) will not apply to **Claims** for **Loss** payable under INSURING AGREEMENT (A);

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
Attorney-in-Fact

ENDORSEMENT NUMBER: 10

**AMEND INSURED VS. INSURED EXCLUSION**

To be attached to and made a part of Policy No. 14-MGU-09-A18651, issued to Point Blank Solutions, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that EXCLUSION (F) is amended by the addition of the following subsection:

(5)     brought by any **Insured Person** who has not served as a duly elected director, officer, trustee, governor, management committee member, member of the management board or General Counsel (or equivalent position) of the **Company** for at least 4 (four) years prior to such **Claim** being first made;

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective Date of this endorsement:

By: _____
                        Attorney-in-Fact

## WHISTLEBLOWER CARVEBACK TO
## INSURED VS. INSURED EXCLUSION

To be attached to and made a part of Policy No. 14-MGU-09-A18651, issued to Point Blank Solutions, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that:

(1)    An **Insured Person's** providing **Specific Assistance** in a **Claim** brought by a shareholder of the **Company** will not alone be deemed "solicitation, assistance or active participation" for purposes of subsection (1) of EXCLUSION (F).

(2)    For purposes of this endorsement, **Specific Assistance** means assistance consisting of actions which are protected under Section 806 of the Sarbanes-Oxley Act of 2002 (or similar "whistleblower" protection provision of applicable federal, state, local or foreign securities law).

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
             Attorney-in-Fact

ENDORSEMENT NUMBER: 12

**AMEND ERISA EXCLUSION**

To be attached to and made a part of Policy No. 14-MGU-09-A18651, issued to Point Blank Solutions, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that EXCLUSION (E) is deleted and replaced with the following:

    (E)      for any actual or alleged violation of the Employee Retirement Income Security Act of 1974 or any regulations promulgated thereunder or of any similar law or regulation; provided, that this EXCLUSION (E) will apply only to Claims involving employee pension or welfare benefit plans organized or sponsored by the **Company** for its own employees;

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
               Attorney-in-Fact

## AMEND CARVEBACK TO INSURED VS. INSURED EXCLUSION
### (CREDITORS' COMMITTEE)

To be attached to and made a part of Policy No. 14-MGU-09-A18651, issued to
Point Blank Solutions, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that the clause at the end of EXCLUSION (F) (beginning "provided, that this EXCLUSION (F)" and ending "duly appointed with respect to the **Company**") is deleted and replaced with the following:

> provided, that this EXCLUSION (F) will not apply to **Claims** brought by a trustee in bankruptcy, receiver, conservator, rehabilitator, liquidator, creditors' committee or other similar official duly appointed with respect to the **Company**;

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By: _____
                       Attorney-in-Fact

ENDORSEMENT NUMBER: 14

**AMEND CRIME/FRAUD EXCLUSION**

To be attached to and made a part of Policy No. 14-MGU-09-A18651, issued to
Point Blank Solutions, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that EXCLUSION (B) is deleted and replaced with
the following:

    (B)     arising out of, based upon or attributable to the commission by any **Insured** of any
deliberately criminal or deliberately fraudulent or dishonest act; provided, that this
EXCLUSION (B) will apply only if there has been a final adjudication in the underlying
proceeding adverse to such **Insured** establishing that the **Insured** so acted;

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective
with the Policy.

    Effective date of this endorsement:



        By:_____
                          Attorney-in-Fact

## SPECIFIC EVENT(S) EXCLUSION – ABSOLUTE

To be attached to and made a part of Policy No. 14-MGU-09-A18651, issued to Point Blank Solutions, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that:

(1)    Solely for purposes of this endorsement, the terms "**Event**" and "**Interrelated Wrongful Act**" are defined as follows:

    (a)    "**Event**" means any of the following **Claim(s)**, notice(s), event(s), investigation(s), litigation(s) and/or action(s):

        United States District Court, Eastern District of New York; Civil Action No. 2:05-cv-04296-JS-ETB; Document 80-1; Filed 3/20/2006

    (b)    "**Interrelated Wrongful Act**" means:

        (i)    any fact, circumstance, situation, act or omission alleged in any **Event(s)**; and/or

        (ii)    any **Wrongful Act** which is the same as, similar or related to, or a repetition of any **Wrongful Act**, underlying fact, circumstance, situation, act or omission alleged or asserted in any **Event(s)**.

(2)    In addition to and not in limitation of any other applicable exclusion, the following exclusions shall apply to this Policy:

The Insurer will not be liable to make any payment of **Loss** in connection with a **Claim** arising out of, based upon or attributable to:

    (a)    any **Event(s)**;

    (b)    the prosecution, adjudication, settlement, disposition, resolution or defense of any **Event(s)** and/or any **Claim(s)** arising from any **Event(s)**;

    (c)    any **Wrongful Act**, underlying fact, circumstance, situation, act or omission in any way relating to any **Event(s)**; or

    (d)    any **Interrelated Wrongful Act**, regardless of whether or not such **Claim** involves the same or different **Insureds** or parties, the same or different legal causes of action or the same or different claimants, or is brought in the same or different venue or resolved in the same or different forum.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

    Effective date of this endorsement:

        By:_____
                      Attorney-in-Fact

ENDORSEMENT NUMBER: 16

## AMEND SEVERABILITY OF EXCLUSIONS PROVISION

To be attached to and made a part of Policy No. 14-MGU-09-A18651, issued to Point Blank Solutions, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that the last paragraph of the EXCLUSIONS section of this Policy is deleted and replaced with the following:

For purposes of determining the application of the above EXCLUSIONS, no **Wrongful Act** of any **Insured Person** will be imputed to any other **Insured Person** and, except for **Wrongful Acts** of the **Company's** CEO or CFO, no **Wrongful Act** of any **Insured Person** will be imputed to the **Company** under INSURING AGREEMENT (B)(2).

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By: 
　　　　　　　Attorney-in-Fact

991-478
Ed. 08/08

Page 1 of 1

## DOMESTIC PARTNER COVERAGE EXTENSION

To be attached to and made a part of Policy No. 14-MGU-09-A18651, issued to Point Blank Solutions, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that the term "spouse," as used in EXTENSION (B) of this Policy, will include an **Insured Person's** domestic partner. As used in this endorsement, "domestic partner" means a natural person qualifying as a domestic partner under the provisions of applicable federal, state or local law or under the provisions of a formal program established by the **Company**.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
                    Attorney-in-Fact

ENDORSEMENT NUMBER:  18

**AMEND NOTICE OF CLAIMS PROVISION**

To be attached to and made a part of Policy No. 14-MGU-09-A18651, issued to Point Blank Solutions, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, CONDITION (B)(1) is hereby deleted in its entirety and replaced with the following:

(1)     The **Insureds** must, as a condition precedent to the obligations of the Insurer under this Policy, give written notice, including full details, to the Insurer of any **Claim** as soon as practicable after the **Company's** Risk Manager or General Counsel becomes aware of such **Claim**.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By: _____
                                                    **Attorney-in-Fact**



ENDORSEMENT NUMBER: 19

## AMEND CONFORMITY TO STATUTE PROVISION

To be attached to and made a part of Policy No. 14-MGU-09-A18651, issued to Point Blank Solutions, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that the following sentence is added to CONDITION (Q), <u>Conformity to Statute</u>:

However, in the event that there is an inconsistency between a State Amendatory Endorsement and any term or condition of this Policy, then where permitted by law, the Insurer shall apply those terms and conditions of either the State Amendatory Endorsement or the Policy which are more favorable to the Insureds.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
                          Attorney-in-Fact



991-726
Ed. 11/06

Page 1 of 1

ENDORSEMENT NUMBER: 20

**AMEND NOTICE OF CLAIMS PROVISION**

To be attached to and made a part of Policy No. 14-MGU-09-A18651, issued to Point Blank Solutions, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that CONDITION (B)(1) is deleted and replaced with the following:

(1)     The **Insureds** must, as a condition precedent to the obligations of the Insurer under this Policy, give written notice, including full details, to the Insurer of any **Claim** as soon as practicable after it is made, but in no event later than sixty (60) days after the end of the **Policy Period**.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By: _____

            Attorney-in-Fact

**FULL SEVERABILITY CLARIFIED
(PRESUMPTIVE MATERIALITY DELETED)**

To be attached to and made a part of Policy No. 14-MGU-09-A18651, issued to Point Blank Solutions, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that CONDITION (M) is deleted and replaced with the following:

(M)   <u>Representations and Severability</u>

The **Insureds** represent that the particulars and statements contained in the **Application** are true, accurate and complete. This Policy is issued in reliance upon the truth of such representations. If any of the particulars or statements in the **Application** is untrue, this Policy will be void with respect to any **Insured** who knew of such untruth or to whom such knowledge is imputed. For purposes of the foregoing sentence:

(1)   no knowledge or information possessed by any **Insured Person** will be imputed to any other **Insured Person**; and

(2)   except for knowledge or information possessed by the **Company's** CEO or CFO, no knowledge or information possessed by any **Insured Person** will be imputed to the **Company**.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
                    Attorney-in-Fact



## AMEND SUBROGATION PROVISION
## (FINAL ADJUDICATION)

To be attached to and made a part of Policy No. 14-MGU-09-A18651, issued to
Point Blank Solutions, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that CONDITION (H)(2) is deleted and replaced with
the following:

(2)    In the event of any payment under this Policy, the Insurer will be subrogated to the extent
of such payment to all of the **Insureds'** rights of recovery, including without limitation
the **Insured Persons'** rights to indemnification or advancement from the **Company**. The
**Insureds** must execute all papers required and do everything necessary to secure such
rights and to enable the Insurer to bring suit in their name. In no event, however, will the
Insurer exercise its rights of subrogation against an **Insured Person** unless a final
adjudication adverse to such **Insured Person** has established that he or she (i) gained a
profit or advantage to which he or she was not legally entitled, or (ii) committed a
criminal or deliberately fraudulent or dishonest act.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective
with the Policy.

Effective date of this endorsement:

By:_____
          Attorney-in-Fact

## DERIVATIVE DEMAND INVESTIGATION COSTS COVERAGE

To be attached to and made a part of Policy No. 14-MGU-09-A18651, issued to Point Blank Solutions, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged:

(1)    INSURING AGREEMENTS is amended by the addition of the following:

The Insurer will pay to or on behalf of the **Company** all **Derivative Demand Investigation Costs** incurred by the **Company** as a result of a **Derivative Demand** first received by the **Company's** Board of Directors and reported in writing to the Insurer during the **Policy Period** or the Discovery Period, if purchased, up to the amount of the **Derivative Demand Investigation Costs Sub-Limit**.

(2)    DEFINITIONS is amended by the addition of the following:

**Derivative Demand** means a written demand by one or more shareholders of the **Company** made upon its Board of Directors to bring a civil proceeding in a court of law against an **Insured Person** for a **Wrongful Act**.

**Derivative Demand Investigation Costs** means reasonable fees, costs and expenses (including but not limited to attorneys' fees and experts' fees) incurred in connection with the investigation or evaluation of any **Derivative Demand**, but excluding wages, salaries, fees, benefits or overhead expenses of any **Insured Person**.

**Derivative Demand Investigation Costs Sub-Limit** means $250,000.

(3)    The Insurer's maximum aggregate liability for **Derivative Demand Investigation Costs** resulting from all **Derivative Demands** shall be the amount set forth in the definition of **Derivative Demand Investigation Costs Sub-Limit**, regardless of the number of **Derivative Demands** received during the **Policy Period** or the Discovery Period, if purchased. The **Derivative Demand Investigation Costs Sub-Limit** shall be part of and not in addition to the Limit of Liability set forth in Item 3 of the Declarations, and payment of such **Derivative Demand Investigation Costs** shall reduce such Limit of Liability.

(4)    There shall be no retention applicable to **Derivative Demand Investigation Costs**.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By: _____
                       Attorney-in-Fact

## AMEND DEFINITION OF COMPANY
## TO INCLUDE DEBTOR-IN-POSSESSION

To be attached to and made a part of Policy No. 14-MGU-09-A18651, issued to Point Blank Solutions, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged:

(1)      DEFINITION (C) **Company** is amended to read as follows:

      (C)     **Company** means the **Named Corporation** and any **Subsidiary** thereof, including, in the event a bankruptcy proceeding is instituted by or against any of the foregoing entities, the resulting debtor-in-possession (or equivalent status outside the United States), if any.

(2)      The following subsection is added to EXCLUSION (F):

      (6)     brought and maintained by the **Company** in its capacity as debtor-in-possession pursuant to a bankruptcy proceeding;

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By: _____
                       Attorney-in-Fact

ENDORSEMENT NUMBER: 25

**DELETE RETENTION WAIVER FOR NO LIABILITY**

To be attached to and made a part of Policy No. 14-MGU-09-A18651, issued to Point Blank Solutions, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged:

(1)     DEFINITION (I) **No Liability** is deleted in its entirety.

(2)     CONDITION (A) <u>Limit of Liability and Retention,</u> subsection (5), is deleted in its entirety.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:<u>                                        </u>

Attorney-in-Fact

**SEPARATE RETENTION FOR SECURITIES CLAIMS
UNDER INSURING AGREEMENT (B)(1)**

To be attached to and made a part of Policy No. 14-MGU-09-A18651, issued to Point Blank Solutions, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that, solely for purposes of **Loss** payable under INSURING AGREEMENT (B)(1) arising from any **Securities Claim**, the retention stated in Item 4(b) of the Declarations is amended to be $500,000.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
    **Attorney-in-Fact**

## AMEND CHANGE IN CONTROL PROVISION

To be attached to and made a part of Policy No. 14-MGU-09-A18651, issued to Point Blank Solutions, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is hereby understood and agreed that CONDITION (F) Changes in Control is amended to read as follows:

(F)     Changes in Control

     (1)     If, during the Policy Period, any of the following transactions or events (each a "Change in Control") occurs with respect to the Named Corporation:

         (a)     the Named Corporation merges into or consolidates with another entity such that the Named Corporation is not the surviving entity, or

         (b)     another entity, person or group of entities and/or persons acting in concert acquires securities or voting rights which result in ownership or voting control by the other entity(ies) or person(s) of more than 50% of the outstanding securities representing the present right to vote for the election of directors of the Named Corporation;

         then coverage under this Policy will continue in full force and effect until the end of the Policy Period with respect to Claims for Wrongful Acts committed or allegedly committed before the effective date of such Change in Control, but coverage will cease with respect to Claims for Wrongful Acts committed or allegedly committed thereafter and the premium will be considered fully earned in consideration of the coverage extended.

     (2)     If, during the Policy Period, any of the following transactions or events (each a "Change in Control") occurs with respect to a Subsidiary:

         (a)     the Subsidiary ceases to be a Subsidiary;

         then coverage under this Policy with respect to Claims against such Subsidiary or any Insured Person thereof will continue in full force and effect until the end of the Policy Period with respect to Claims for Wrongful Acts committed or allegedly committed before the effective date of such Change in Control, but coverage under this Policy with respect to Claims against such Subsidiary or any Insured Person thereof will cease with respect to Claims for Wrongful Acts committed or allegedly committed thereafter.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

     Effective date of this endorsement:

            By:_____
                   Attorney-in-Fact

ENDORSEMENT NUMBER: 28

**NON-RESCINDABLE:**
**INSURING AGREEMENT (A) ONLY**

To be attached to and made a part of Policy No. 14-MGU-09-A18651, issued to
Point Blank Solutions, Inc. by U.S. Specialty Insurance Company.


In consideration of the premium charged, it is agreed that, notwithstanding anything in this Policy to the contrary, the Insurer shall not be entitled under any circumstances to rescind the coverage provided under Insuring Agreement (A) of this Policy.


All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:


By:_____
                Attorney-in-Fact



991-861                              Page 1 of 1
Ed. 04/04

## INSURER DOWNGRADE ENDORSEMENT

To be attached to and made a part of Policy No. 14-MGU-09-A18651, issued to Point Blank Solutions, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that, notwithstanding anything to the contrary in this Policy, the **Named Corporation** may cancel this Policy in the event the Insurer's A.M. Best rating falls below "A." (However, the **Named Corporation** may not cancel this Policy after the effective date of any acquisition of the **Named Corporation** as described in Condition (F)). In such event, the **Named Corporation** will provide written notice to the Insurer stating when such cancellation will be effective, and the Insurer will retain a pro rata portion of the premium.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____

            Attorney-in-Fact

## SECURITIES ACT SECTION 11 AND 12 ENDORSEMENT

To be attached to and made a part of Policy No. 14-MGU-09-A18651, issued to Point Blank Solutions, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that:

(1) For purposes of this endorsement, **Section 11 or 12 Claim** means any **Securities Claim** alleging a violation of Section 11 or 12 of the Securities Act of 1933 in connection with an initial or subsequent public offering of the **Company's** securities.

(2) Notwithstanding anything in this Policy to the contrary, the Insurer will not assert that any award in or settlement of any **Section 11 or 12 Claim** constitutes uninsurable loss under this Policy. For purposes of determining the insurability of such amounts, the Insurer agrees to abide by the law of whichever jurisdiction is applicable to such **Section 11 or 12 Claim** and is most favorable to the **Insureds** in that regard.

(3) EXCLUSION (A) will not apply to **Section 11 or 12 Claims**.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
    Attorney-in-Fact

## POLICYHOLDER DISCLOSURE – TERRORISM PREMIUM NOTICE

To be attached to and made a part of Policy No. 14-MGU-09-A18651, issued to Point Blank Solutions, Inc. by U.S. Specialty Insurance Company.

Your Policy contains coverage for certain losses caused by terrorism. We are required to notify you of the portion of the premium, if any, attributable to the coverage for terrorist acts certified under the Terrorism Risk Insurance Act (TRIA) of 2002, as extended on December 22, 2005. TRIA also requires us to provide disclosure of federal participation in payment of terrorism losses resulting from an "act of terrorism" as defined by Section 102(1) of TRIA.

Section 102(1) of TRIA defines the term "act of terrorism" as any act that is certified by the Secretary of the Treasury of the United States – in concurrence with the Secretary of State of the United States and the Attorney General of the United States – to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Please be advised that the actual coverage provided by your Policy for acts of terrorism, as is true for all coverages, is limited by the terms, conditions, exclusions, limits and other provisions of your Policy, any endorsements to the Policy and generally applicable rules of law.

YOU SHOULD KNOW THAT, WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. UNDER THIS FORMULA, THE UNITED STATES GOVERNMENT GENERALLY PAYS 90% (85% COMMENCING IN 2007) OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS COVERED BY THE FEDERAL GOVERNMENT UNDER TRIA.

The amount of your premium that is attributable to coverage for terrorist acts certified under TRIA is $0 .

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By: _____
　　　　　Attorney-in-Fact

## FOR-PROFIT ODL EXTENSION
### (SPECIFIC PERSON SERVING WITH SPECIFIC OUTSIDE ENTITY)

To be attached to and made a part of Policy No. 14-MGU-09-A18651, issued to Point Blank Solutions, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that:

(1)     For purposes of this endorsement, "**Specific For-Profit Outside Entity**" means the following for-profit corporation, association, organization or entity:

Lifestone Materials, LLC

(2)     The following individuals shall be deemed an **Insured Person** serving in an **Outside Capacity** with the **Specific For-Profit Outside Entity**:

General Larry Ellis & Sam White ("**Specific Insured Person**")

(3)     DEFINITION (J) **Outside Capacity** is amended to include the **Specific Insured Person's** service as a director, officer, trustee, regent or governor of, or in another equivalent position with respect to, the **Specific For-Profit Outside Entity**, during such time that such service is at the request of the **Company**.

(4)     DEFINITION (K) **Outside Entity** is amended to include the **Specific For-Profit Outside Entity**, but solely with respect to the **Specific Insured Person** serving in an **Outside Capacity** with the **Specific For-Profit Outside Entity**.

(5)     If the Insurer (including any affiliate of the Insurer) shall have issued a policy of insurance to the **Specific For-Profit Outside Entity**, and a **Claim** gives rise to coverage under both this Policy (by reason of this endorsement) and such other policy, then the Insurer's combined maximum aggregate limit of liability under all such policies (including this Policy) with respect to such **Claim** shall not exceed the largest single available limit of liability under any such policy. However, nothing in this paragraph (5) is intended, nor shall it be construed, to increase this Policy's Limit of Liability (which shall remain the amount set forth in Item 3 of the Declarations) or such other policy's limit of liability.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement: 3/18/2009

By: _____
                  Attorney-in-Fact