IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| POINT BLANK SOLUTIONS INC., *et al.*,[1] | ) | Case No. 10-11255 (PJW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |
| POINT BLANK SOLUTIONS INC., | ) | Adv. Proc. No. 11-51759 (PJW) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JEFFREY R. BROOKS INDIVIDUAL | ) | |
| RETIREMENT ACCOUNT; JEFFREY R. | ) | |
| BROOKS, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

---

[1] Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number and their respective addresses, are: Point Blank Solutions Inc. (9361), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Point Blank Body Armor, Inc. (4044), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Protective Apparel Corporation of America (9051), 179 Mine Lane, Jacksboro, TN 37757; and PBSS, LLC (8203), 2102 S.W. 2nd Street, Pompano Beach, FL 33069.

# TABLE OF CONTENTS

Nature and Stage of Proceeding ........................................................................................1

Summary of Argument .......................................................................................................1

Statement of Facts ..............................................................................................................7

    I.     The Bankruptcy Proceedings...............................................................................7

    II.    Mr. Henderson's Role in the Bankruptcy Proceedings .......................................9

    III.   The State Court Action......................................................................................11

    IV.   The Instant Adversary Proceeding ...................................................................12

Argument...........................................................................................................................13

    I.     The State Court Action Should Be Stayed Under 11 U.S.C. § 362(a)(1) Because Point Blank Is The Real Party Defendant In The State Court Action.................................................13

        A.   Point Blank Is The Real Party Defendant In The State Court Action ...........................15

        B.   An "Identity of Interest" Exists Between Point Blank And Mr. Henderson ................16

        C.   Stay Protection Is Essential To Point Blank's Reorganization Efforts .........................17

    II.    The State Court Action Should Be Stayed Under 11 U.S.C. § 362(a)(3) Because The Claims Asserted In The State Court Action Are Property Of Point Blank's Estate.................18

        A.   The Claims Asserted In The State Court Action, To The Extent Such Claims May Be Stated, Are Derivative Claims ................................................................18

        B.   The Derivative Claims Are Property Of Point Blank's Bankruptcy Estate And Thus Are Protected By The Automatic Stay Under 11 U.S.C. § 362(a)(3) ...................................21

    III.   The State Court Action Should Be Enjoined Under 11 U.S.C. § 105(a)......................22

        A.   An Injunction Barring Further Prosecution Of The State Court Action Is Authorized Under 11 U.S.C. § 105(a)..........................................................................22

        B.   An Injunction Barring Further Prosecution Of The State Court Action Is Warranted Under 11 U.S.C. § 105(a)..........................................................................23

           (i)   Point Blank Has A Reasonable Probability Of Success On The Merits And Will Be Irreparably Injured By Denial Of The Preliminary Injunction..........................................23

(ii) A Preliminary Injunction Will Not Harm Defendants............................................27

(iii) Granting The Preliminary Injunction Will Be In The Public Interest ...................28

C. No Bond Or Other Security Should Be Required In This Case ....................................28

Conclusion.............................................................................................................................29

DOCS_LA:235520.4

# TABLE OF AUTHORITIES

## Cases

A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994 (4th Cir. 1986) ............................................13, 14

Agostino v. Hicks, 845 A.2d 1110 (Del. Ch. 2004) ................................................................19, 20

Allegheny Energy, Inc. v. DQE, Inc., 171 F.3d 153 (3d Cir. 1999) ..............................................23

In re All Am. of Ashburn, Inc., 805 F.2d 1515 (11th Cir. 1986) ..................................................22

In re Am. Film Technologies, Inc., 175 B.R. 847 (Bankr. D. Del. 1994) ...........................passim

In re AP Indus., Inc., 117 B.R. 789 (Bankr. S.D.N.Y. 1990) ........................................................22

In re At Home Corp., 154 F. App'x. 666 (9th Cir. 2005)..........................................................18, 21

In re Cont'l Airlines, 177 B.R. 475 (D. Del. 1993) ....................................................14, 16, 17, 25

In re Integrated Health Services, Inc., 281 B.R. 231 (Bankr. D. Del. 2002) ................................28

In re Ionosphere Clubs, Inc., 111 B.R. 423 (Bankr. S.D.N.Y. 1990) aff'd in part sub nom. In re
    Ionosphere Clubs Inc., 124 B.R. 635 (S.D.N.Y. 1991) ..........................................................22

In re Midway Games, Inc., 428 B.R. 327 (Bankr. D. Del. 2010) opinion clarified, 2010 WL
    2076955 (Bankr. D. Del.) ....................................................................................................13, 14

In re RNI Wind Down Corp., 348 B.R. 286 (Bankr. D. Del. 2006) subsequently aff'd, 359 F.
    App'x. 352 (3d Cir. 2010) ..........................................................................................................21

*In re Television Studio School of New York*, 77 B.R. 411 (Bankr. S.D.N.Y. 1987)................22, 25

McCartney v. Integra Nat. Bank N., 106 F.3d 506 (3d Cir. 1997)..........................................14, 16

Smith v. Waste Mgmt., Inc., 407 F.3d 381 (5th Cir. 2005)....................................................19, 20

Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031 (Del. 2004)...........................18, 19

## Statutes

11 U.S.C. § 105 ............................................................................................................................passim

11 U.S.C. § 362 ............................................................................................................................passim

11 U.S.C. § 541 ....................................................................................................................................21

## Rules

Bankruptcy Rule 7065 ..............................................................................................................1, 23, 28

Fed. R. Bankr. P. 7001..........................................................................................................................1

DOCS_LA:235520.4

## Nature and Stage of Proceeding

Point Blank Solutions Inc. ("Point Blank" or "Plaintiff"), a debtor and debtor in possession in the above-captioned chapter 11 cases and the plaintiff in the above-captioned adversary proceeding, respectfully submits this memorandum of law in support of *Plaintiff's Motion for Preliminary Injunction* (the "Motion"), filed concurrently herewith.

## Summary of Argument

1.  By the Motion, Point Blank requests a preliminary injunction under 11 U.S.C. § 105(a), Fed. R. Bankr. P. 7001(7) and Fed. R. Bankr. P. 7065 and an extension of the automatic stay under 11 U.S.C. § 362(a). In particular, Point Blank seeks to enjoin and stay a lawsuit filed by Defendants Jeffrey R. Brooks Individual Retirement Account ("Brooks Retirement Account") and Jeffrey R. Brooks ("Brooks") in New York state court (the "State Court Action") against James R. Henderson, Point Blank's current Chief Executive Officer and current Chairman of Point Blank's Board of Directors.[2] In the State Court Action, Defendants – one of whom is the brother of convicted felon David H. Brooks, Point Blank's former Chief Executive Officer and former Chairman of Point Blank's Board of Directors – seek compensatory and punitive damages of not less than $7,000,000 based on allegations that Mr. Henderson breached his fiduciary duties to Point Blank and its shareholders. As discussed

---

[2] A copy of the complaint filed in the State Court Action (the "State Court Complaint") was attached as Exhibit 1 to Point Blank's *Verified Complaint for (I) Preliminary and Permanent Injunctive Relief, (II) Declaratory Relief Extending the Automatic Stay and (III) Damages for Willful Violation of the Automatic Stay* [D.I. 1] (the "Verified Complaint"), which commenced the instant adversary proceeding. As set forth in the Verified Complaint, Defendant Brooks Retirement Account is the only plaintiff named in the caption of the State Court Complaint, but the State Court Complaint also identifies Defendant Brooks as a plaintiff. *See* State Court Complaint ¶ 16 (identifying the "Plaintiff" as the brother of David H. Brooks).

below, the State Court Action is barred by the automatic stay pursuant to 11 U.S.C. §§ 362(a)(1) and (3), and an injunction of the State Court Action is warranted under 11 U.S.C. § 105(a).

2.      Although Point Blank is not named as a defendant in the State Court Action, the automatic stay extends to the State Court Action under 11 U.S.C. § 362(a)(1) because (a) Point Blank is the real party defendant in the State Court Action, (b) an "identity of interest" exists between Point Blank and Mr. Henderson and (c) stay protection is essential to Point Blank's reorganization efforts. Permitting the State Court Action to proceed would directly affect Point Blank, its assets and its reorganization efforts, and would allow Defendants to complete an "end around" the protections afforded to Point Blank under 11 U.S.C. § 362(a)(1).

a.      Point Blank is the real party defendant in the State Court Action because a judgment against Mr. Henderson in the State Court Action will in effect be a judgment or finding against Point Blank. For instance, in the State Court Action, Defendants challenge the decision to de-register Point Blank as a public company, a decision that was authorized by this Court in connection with Point Blank's recent settlement with the Securities and Exchange Commission (the "SEC"). Defendants also challenge Point Blank's proposed plan of reorganization, alleging that Point Blank's failure since 2009 to make certain SEC filings and Point Blank's subsequent de-registration are "part of an ongoing plan to leave [Point Blank] with no alternative but to accept a proposed 'going private' acquisition" of Point Blank. State Court Complaint ¶¶ 1-2, 4, 28-29. The State Court Action thus seeks a "do-over" of this Court's authorization of the SEC settlement and is,

-2-

in essence, an objection to Point Blank's proposed plan of reorganization that should be raised in this Court during the plan confirmation process.

b.  The automatic stay under 11 U.S.C. § 362(a)(1) also extends to the State Court Action because an "identity of interest" exists between Point Blank and Mr. Henderson, such that continued prosecution of the State Court Action will directly affect Point Blank, its assets and its ability to pursue a successful plan of reorganization. An "identity of interest" exists between Point Blank and Mr. Henderson because:

(i)  The State Court Action challenges actions taken by Mr. Henderson in his capacity as an officer and director of Point Blank. As a result, Point Blank could be collaterally estopped in subsequent litigation from relitigating issues determined against Mr. Henderson in the State Court Action. The risk of collateral estoppel will require Point Blank to defend the State Court Action as fully as if Point Blank were a named defendant. Continued prosecution of the State Court Action thus will require Point Blank "to do precisely what the automatic stay is intended to excuse it from doing." *In re Am. Film Technologies, Inc.*, 175 B.R. 847, 851 (Bankr. D. Del. 1994).

(ii)  Mr. Henderson has indemnification and advancement rights against Point Blank pursuant to Point Blank's certificate of incorporation and Point Blank's bylaws, which may be implicated in the State Court Action. Even if Point Blank's directors and officers ("D&O")

-3-

liability insurance policies provide coverage for Mr. Henderson in the

State Court Action, such coverage may be subject to a $500,000

retention. Thus, Point Blank's indemnification and advancement

obligations to Mr. Henderson in connection with the State Court

Action would be a drain on Point Blank's already limited resources.

c.     Extension of the automatic stay to the State Court Action also is essential

to Point Blank's reorganization. Mr. Henderson plays a pivotal role in the

operation and management of Point Blank's business, and is heavily involved in

Point Blank's bankruptcy case. Prosecution of the State Court Action would

burden Mr. Henderson and therefore would detract from his ability to assist Point

Blank in its pursuit of a successful reorganization. A distraction for Mr.

Henderson would be particularly harmful to Point Blank at this stage of Point

Blank's bankruptcy proceedings, because Mr. Henderson is essential to Point

Blank's current efforts to develop an amended plan of reorganization and to

obtain exit financing to support the plan.

3.     The State Court Action also is barred by the automatic stay pursuant to 11

U.S.C. § 362(a)(3) because it is an attempt to exercise control over property of Point Blank's

estate. In the State Court Complaint, Defendants allege that Mr. Henderson breached his

fiduciary duties to Point Blank and its shareholders by, among other things, failing to cause Point

Blank to make certain public filings. *See, e.g.*, State Court Complaint ¶ 1. The claims and

allegations asserted in the State Court Action are derivative claims that are property of Point

Blank's bankruptcy estate. Permitting the State Court Action to proceed would violate the

-4-

automatic stay by allowing Defendants to improperly prosecute claims that belong to Point Blank and that Defendants have no standing to pursue.

4.      Finally, even if the automatic stay did not bar the State Court Action against Mr. Henderson (which it does), injunctive relief pursuant to 11 U.S.C. § 105(a) is warranted in this case because continued prosecution of the State Court Action would pose a serious threat to Point Blank's reorganization efforts.  In particular, Point Blank and its bankruptcy estate will suffer irreparable harm if the State Court Action is not enjoined because:

a.      In the State Court Action, Defendants assert a claim for breach of fiduciary duty that depends in part upon the decision to de-register Point Blank in connection with Point Blank's Court-approved settlement with the SEC.  Thus, Defendants seek relief in the State Court Action – namely, a judgment that the decision to de-register Point Blank constituted a breach of Mr. Henderson's fiduciary duty to Point Blank and its shareholders – that would directly conflict with this Court's order authorizing de-registration.

b.      By the State Court Complaint, Defendants essentially seek a judgment from the New York state court that Point Blank's proposed plan of reorganization cannot be confirmed.  Defendants' objections to Point Blank's proposed plan, however, can and should be asserted in this Court in connection with the plan confirmation process.  In fact, the plan confirmation process in this Court – not the State Court Action – is the only appropriate time and forum for Defendants to assert their objections to the proposed plan. Permitting the State Court Action to

-5-

proceed will allow Defendants to circumvent the plan confirmation process and will impede Point Blank's reorganization efforts.

c.    Unless the State Court Action against Mr. Henderson is enjoined, Point Blank's ability to pursue a successful reorganization will be impaired because, as discussed above, the State Court Action will burden Mr. Henderson and therefore detract from his ability to assist Point Blank in, among other things, its current efforts to develop an amended plan of reorganization and to obtain exit financing to support the plan.

d.    Point Blank will be forced to analyze, investigate and potentially litigate the State Court Action in order to protect its interests in the derivative claims. Moreover, because Defendants allege that Mr. Henderson acted in his capacity as an officer and director of Point Blank, Point Blank will be exposed to significant collateral estoppel risks if Point Blank does not vigorously monitor and intervene where necessary in the State Court Action. The allocation of Point Blank's resources – including the time and attention of Point Blank's key personnel (including Mr. Henderson) and Point Blank's bankruptcy counsel – to the State Court Action would deplete Point Blank's already limited resources and would impair Point Blank's ability to pursue a successful plan of reorganization.

e.    Finally, as discussed above, Point Blank's indemnification and advancement obligations to Mr. Henderson in connection with the State Court Action would be a drain on Point Blank's already limited resources and thus a further impediment to Point Blank's reorganization efforts.

-6-

5.     Therefore, for the reasons set forth herein, Point Blank respectfully submits that a preliminary injunction and an extension of the automatic stay barring further prosecution of the State Court Action is appropriate in this case.

## Statement of Facts

## I.     The Bankruptcy Proceedings

6.     On April 14, 2010 (the "Petition Date"), Point Blank and its affiliated debtors and debtors in possession (collectively, "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Point Blank continues in the possession of its properties, and is operating and managing its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.     On January 11, 2011, Debtors filed their proposed *Joint Chapter 11 Plan of Reorganization* [Bankr. D.I. 1006] (the "Plan") and their *Disclosure Statement Describing Joint Chapter 11 Plan of Reorganization* [Bankr. D.I. 1007] (the "Disclosure Statement"). Debtors currently are in the process of preparing an amended Disclosure Statement. A hearing on the Disclosure Statement is scheduled for April 21, 2011. Debtors also are in the process of amending the Plan, with a confirmation hearing scheduled for June 1, 2011.

8.     On February 24, 2011, Debtors filed *Debtors' Motion for: (I) Approval of a Consent Agreement with the Securities and Exchange Commission; (II) Limited Relief from the Automatic Stay; and (III) Authority to De-Register as a Public Company* [Bankr. D.I. 1140] (the "SEC Motion"). In the SEC Motion, Debtors sought approval from this Court of a consent agreement (the "Consent Agreement") between Point Blank and the SEC that would resolve certain causes of action the SEC intended to assert against Point Blank. As set forth in the SEC

-7-

Motion, approval of the Consent Agreement was in the best interests of Debtors and their estates

because (a) the SEC agreed to not seek any civil damages and penalties against Point Blank, (b)

resolution of the SEC matter was important to the success of Point Blank's governmental

contracting business and (c) approval of the Consent Agreement would save Point Blank and its

creditors the significant fees and expenses that would arise from defending the SEC matter.

9.      In the SEC Motion, Debtors also sought authority to de-register Point

Blank as a public company under federal securities laws. As explained in the SEC Motion, the

Consent Agreement with the SEC required Point Blank to file all financial disclosures that are

required of a registered public company. Point Blank was not current on its filings as of the

Petition Date, and did not intend to file public disclosures prior to approval of the Consent

Agreement. Moreover, Point Blank could not satisfy its filing requirements absent significant

time and expense, which Point Blank estimated would exceed $1,000,000. Therefore, Point

Blank sought authority to de-register in connection with approval of the Consent Agreement so

that Point Blank would not violate the Consent Agreement upon its approval.

10.     At the March 10, 2011 hearing on the SEC Motion, the Court stated:

Okay. I'm going to grant the motion and overrule the objections.
To me, what this boils down to is Mr. Avila's testimony that the
company does not -- if the company were to be compliant -- SEC
compliant, it would divert money from operating expenses and we
all know that from day one this company has been hanging on by a
very, very narrow string. And for that reason alone, I think it's
good to get this SEC issue behind them.

And to say we can wait till June 1, although Mr. Avila has not
testified on this issue, it strikes me that if he did all the hiring and
set up all the systems and put into play whatever is necessary to
produce a 10-K, we're not talking about next week. We're not
talking about April. We're not talking about May. Maybe we're
talking about June 1, but I'm not certain of that. And I don't think

-8-

it's worth jeopardizing this settlement with the consent order to see if it's possible to have this company become compliant and I'm not going to jeopardize its continued operations to see if that can be done.

*See* March 10, 2011 Hearing Transcript [Bankr. D.I. 1212] at 93:12-94:4.

11.     On March 29, 2011, the Court entered an *Order Granting Debtors'*

*Motion for: (I) Approval of a Consent Agreement with the Securities and Exchange Commission;*

*(II) Limited Relief from the Automatic Stay; and (III) Authority to De-Register as a Public*

*Company* [Bankr. D.I. 1259] (the "SEC Order"). The SEC Order expressly authorized Point

Blank to de-register as a public company as set forth in the SEC Motion.

## II.     Mr. Henderson's Role in the Bankruptcy Proceedings

12.     Mr. Henderson has been Debtors' Chief Executive Officer since April

2009, and has been Chairman of Debtor's Board of Directors since August 2008. Mr. Henderson

occupies a critical role in the continued operation and management of Debtors' businesses, and is

involved in all aspects of Debtors' complex bankruptcy cases. Among other things, Mr.

Henderson:

- Leads the development and execution of business strategy, and develops strategic relationships to lower cost structure or enhance product offerings;

- Is the primary contact for critical customer and supplier relationships, actively pursues new business opportunities and relationships, and ensures that these critical relationships remain intact throughout the bankruptcy proceedings;

-9-

- Is the executive leader of all of Debtors' operations, including two manufacturing sites and almost 1000 employees;

- Coordinates the activities of Debtors' management staff through weekly meetings and frequent ad hoc interactions; and

- Develops the key assumptions and reviews the detailed financial projections and budgets across all of Debtors' business.

13.     Mr. Henderson's undivided attention is crucial to Debtors' reorganization efforts. In particular, Mr. Henderson performs essential functions in connection with:

- Development of the Plan (including current efforts to amend the Plan) and all associated business elements (such as financial projections, liquidation analyses and assumption/rejection of contracts);

- Debtors' efforts to obtain exit financing to support the Plan;

- Cash management and the development of 13 week cash flow forecasts; and

- Resolution of outstanding "legacy" issues including governmental investigations, tax claims and litigation.

14.     Mr. Henderson has indemnification and advancement rights against Point Blank pursuant to Point Blank's certificate of incorporation (the "Certificate of Incorporation") and Point Blank's bylaws (the "Bylaws"), which may be implicated in the State Court Action.[3] *See, e.g.*, Certificate of Incorporation, Article Ninth (mandatory indemnification "to the fullest

---

[3] A copy of the Certificate of Incorporation was attached as Exhibit 2 to the Verified Complaint, and a copy of the Bylaws was attached as Exhibit 3 to the Verified Complaint. As set forth in the Verified Complaint, the corporate name listed on the Certificate of Incorporation is DHB Capital Group Inc. and the corporate name listed on the Bylaws is DHB Industries, Inc. Point Blank was formerly known as DHB Industries, Inc., which in turn was formerly known as DHB Capital Group, Inc.

extent authorized or permitted by the General Corporation Law of Delaware and any other applicable law" and advancement of expenses); Bylaws, Section 6.1 (mandatory indemnification "to the fullest extent permitted by Delaware law"); Bylaws, Section 6.3 (advancement of expenses "to the fullest extent permitted by Delaware law").

15.     Mr. Henderson also has rights under Point Blank's D&O insurance polices. Point Blank's primary D&O insurance policy (the "Primary Policy") provides up to $20,000,000 of coverage, which is available to Mr. Henderson (among other "Insured Persons") and to Point Blank (as reimbursement for Point Blank's indemnification or advancement of expenses to "Insured Persons" and in connection with certain "Securities Claims").[4] Point Blank's coverage under the Primary Policy is subject to a $500,000 retention. It is not clear what position Point Blank's insurer will take regarding (a) whether coverage is available in connection with the State Court Action or (b) whether any coverage available in connection with the State Court Action is subject to the $500,000 retention (given the fact that Point Blank is the real party defendant in the State Court Action because the State Court Action challenges decisions made and actions taken by Point Blank's management in connection with the SEC settlement and proposed Plan).

## III.     The State Court Action

16.     On March 23, 2011, Defendants commenced the State Court Action by filing the State Court Complaint with the Supreme Court of the State of New York, County of

---

[4] A copy of the Primary Policy was attached as Exhibit 4 to the Verified Complaint. As set forth in the Verified Complaint, the Primary Policy has been extended to June 30, 2011. Point Blank also has an excess D&O insurance policy that provides $10,000,000 of excess coverage to Mr. Henderson (among other "Insured Persons").

New York (the "New York State Court"). The State Court Action is captioned *Jeffrey R. Brooks Individual Retirement Account v. James R. Henderson*, Index No. 650781/2011. The State Court Action asserts one cause of action against Mr. Henderson for breach of fiduciary duties owed in Mr. Henderson's capacity as a director and officer of Point Blank to Point Blank and its shareholders. *See* State Court Complaint ¶¶ 31-40. Defendants seek compensatory damages of not less than $2,000,000 and punitive damages of not less than $5,000,000. *Id.* at ¶¶ 39-40.

17.    In the State Court Complaint, Defendants allege that Mr. Henderson breached his fiduciary duties to Point Blank and its shareholders by "failing to cause [Point Blank] to undergo financial audits over the past two years and to make its required public filings as a registered company under the federal securities laws." *Id.* at ¶ 1. Defendants also challenge the decision to de-register Point Blank as a public company, which as discussed above was authorized by this Court pursuant to the SEC Order. *Id.* at ¶¶ 24-26. Moreover, Defendants challenge Point Blank's proposed Plan, alleging that the failure to cause Point Blank to make its required SEC filings since 2009 and the decision to de-register Point Blank are "part of an ongoing plan to leave [Point Blank] with no alternative but to accept a proposed 'going private' acquisition" of Point Blank. *Id.* at ¶¶ 2, 4, 28-29. Finally, Defendants allege that the "shareholders' realization that [Point Blank] is pursuing the path of de-registration ... has already depressed the value of [Point Blank's] stock price ..." *Id.* at ¶ 37.

## IV.    <u>The Instant Adversary Proceeding</u>

18.    Point Blank commenced the instant adversary proceeding on April 8, 2011 by filing its Verified Complaint [D.I. 1]. Point Blank also is filing *Plaintiff's Emergency Motion*

-12-

*to Fix a Hearing Date and Shorten Notice on Plaintiff's Motion for Preliminary Injunction* concurrently with the instant Motion.

## Argument

**I.     The State Court Action Should Be Stayed Under 11 U.S.C. § 362(a)(1) Because Point Blank Is The Real Party Defendant In The State Court Action**

19.     Under 11 U.S.C. § 362(a)(1), Point Blank's bankruptcy petition operates as an automatic stay of "the commencement or continuation, including the issuance or employment of process, of a judicial ... action or proceeding against [Point Blank] that was or could have been commenced before" the Petition Date or "to recover a claim against [Point Blank] that arose before" the Petition Date.[5]  11 U.S.C. § 362(a)(1).  The automatic stay is one of the "fundamental debtor protections" and is designed to "protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors, and to provide the debtor and its executives with a reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization for the debtor." *In re Midway Games, Inc.*, 428 B.R. 327, 333 (Bankr. D. Del. 2010) *opinion clarified*, 2010 WL 2076955 (Bankr. D. Del.) (quoting *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 998 (4th Cir. 1986)).

---

[5]  If Point Blank had been named as a defendant in the State Court Action, the State Court Action would have violated the plain language of 11 U.S.C. § 362(a)(1).  In the State Court Action, Defendants allege that Point Blank's failure to undergo financial audits and make its SEC filings began in 2009 (*i.e.,* prior to the Petition Date) and was part of an "ongoing plan" to accomplish a "going private" acquisition of Point Blank.  *Id.* at ¶¶ 1-2, 4.

20.     In order to further the "fundamental purposes" underlying the automatic

stay, courts in this Circuit and others have held that, under appropriate circumstances, the

automatic stay may be extended beyond direct actions against the debtor to lawsuits against non-

debtors. *Id.*; *see also McCartney v. Integra Nat. Bank N.*, 106 F.3d 506, 510 (3d Cir. 1997); *A.H.*

*Robins Co., Inc.*, 788 F.2d at 999; *In re Cont'l Airlines*, 177 B.R. 475, 479 (D. Del. 1993); *In re*

*Am. Film Technologies, Inc.*, 175 B.R. at 855.  The automatic stay is properly extended to

actions against non-debtors where an "identity of interest" exists between the debtor and non-

debtor "such that the debtor is the real party defendant and the litigation will directly affect the

debtor and, more specifically, the debtor's assets or its ability to pursue a successful plan of

reorganization" under chapter 11. *In re Midway Games, Inc.*, 428 B.R. at 334; *see also*

*McCartney*, 106 F.3d at 510 (extension of automatic stay is appropriate where "there is such

identity between the debtor and the third-party defendant that the debtor may be said to be the

real party defendant and that a judgment against the third-party defendant will in effect be a

judgment or finding against the debtor") (quoting *A.H. Robins Co., Inc.*, 788 F.2d at 999)); *In re*

*Cont'l Airlines*, 177 B.R. at 479-80 (extension of automatic stay to lawsuits against directors and

officers was appropriate where "substantive allegations raised in the pleadings" demonstrated

that debtor was "the alleged wrongdoer in those actions").  "Courts have also extended the stay

to nondebtor third parties where stay protection is essential to the debtor's efforts of

reorganization." *McCartney*, 106 F.3d at 510 (citations omitted).

21.     In this case, as discussed in more detail below, an extension of the

automatic stay under 11 U.S.C. § 362(a)(1) is appropriate because (a) Point Blank is the real

-14-

party defendant in the State Court Action, (b) an "identity of interest" exists between Point Blank and Mr. Henderson and (c) stay protection is essential to Point Blank's reorganization efforts.

A.     **Point Blank Is The Real Party Defendant In The State Court Action**

22.     Point Blank is the real party defendant in the State Court Action because a judgment against Mr. Henderson would in effect be a judgment or finding against Point Blank. In the State Court Complaint, Defendants allege that Mr. Henderson breached his fiduciary duties to Point Blank and its shareholders by "failing to cause [Point Blank] to undergo financial audits over the past two years and to make its required public filings as a registered company under the federal securities laws." State Court Complaint ¶ 1. Defendants also challenge the decision to de-register Point Blank as a public company, which was authorized by this Court pursuant to the SEC Order. *Id.* at ¶¶ 24-26. Finally, Defendants challenge Point Blank's proposed Plan, alleging that Point Blank's failure to make its required SEC filings since 2009 and Point Blank's subsequent de-registration are "part of an ongoing plan to leave [Point Blank] with no alternative but to accept a proposed 'going private' acquisition" of Point Blank. *Id.* at ¶¶ 2, 4, 28-29.

23.     Thus, Defendants seek relief in the State Court Action – namely, a judgment that the decision to de-register Point Blank constituted a breach of Mr. Henderson's fiduciary duty to Point Blank and its shareholders – that would be in direct conflict with this Court's SEC Order. Defendants also, in effect, seek a judgment from the New York State Court that Point Blank's proposed Plan cannot be confirmed. As a result, Point Blank is the real party defendant in the State Court Action because a judgment against Mr. Henderson in the State Court

-15-

Action would "in effect be a judgment or finding against" Point Blank. *McCartney*, 106 F.3d at 510.

### B. An "Identity of Interest" Exists Between Point Blank And Mr. Henderson

24.     The automatic stay under 11 U.S.C. § 362(a)(1) extends to the State Court Action because an "identity of interest" exists between Point Blank and Mr. Henderson, such that continued prosecution of the State Court Action will directly affect Point Blank, its assets and its ability to pursue a successful plan of reorganization. An "identity of interest" exists between Point Blank and Mr. Henderson because the State Court Action challenges decisions made and actions taken by Mr. Henderson in his capacity as an officer and director of Point Blank. As a result, Point Blank could be collaterally estopped in subsequent litigation from relitigating issues determined against Mr. Henderson in the State Court Action. *See In re Am. Film Technologies, Inc.*, 175 B.R. at 850 (enjoining state court action against non-debtor directors because debtor faced "risk of being collaterally estopped from denying liability" for directors' actions). In order to protect against this collateral estoppel risk, Point Blank will be required to defend the State Court Action as fully as if Point Blank were a named defendant. Continued prosecution of the State Court Action thus will require Point Blank "to do precisely what the automatic stay is intended to excuse it from doing." *In re Am. Film Technologies, Inc.*, 175 B.R. at 851.

25.     An "identity of interest" also exists between Point Blank and Mr. Henderson because Mr. Henderson has indemnification and advancement rights against Point Blank pursuant to Point Blank's Certificate of Incorporation and Point Blank's Bylaws, which may be implicated in the State Court Action. *See In re Cont'l Airlines*, 177 B.R. at 481 (extension of automatic stay appropriate where prosecution of actions would adversely affect

-16-

debtor's assets because debtor had indemnification and advancement obligations to its directors and officers); *In re Am. Film Technologies, Inc.*, 175 B.R. at 851-52 (enjoining state court action against debtor's present and former directors based in part on debtor's potential indemnification obligations to directors under Delaware law). Although the Primary Policy may provide coverage for Mr. Henderson in the State Court Action, it is not clear what position Point Blank's insurer will take regarding whether any coverage available in connection with the State Court Action is subject to the $500,000 retention applied to Point Blank (given that Point Blank is the real party defendant in the State Court Action). Thus, as in *Cont'l Airlines* and *Am. Film Technologies, Inc.*, an extension of the automatic stay to the State Court Action is warranted based on Point Blank's potential indemnification and advancement obligations to Mr. Henderson.

C.     **Stay Protection Is Essential To Point Blank's Reorganization Efforts**

26.     An extension of the automatic stay under 11 U.S.C. § 362(a)(1) also is warranted based on Mr. Henderson's pivotal role in the operation and management of Point Blank's business, Point Blank's development of an amended Plan and Point Blank's efforts to obtain exit financing to support the Plan. Further prosecution of the State Court Action would burden Mr. Henderson and detract from his ability to assist Point Blank's reorganization efforts, thereby hindering Point Blank's ability to "emerge successfully from bankruptcy under a confirmed plan of reorganization." *In re Cont'l Airlines*, 177 B.R. at 481 (extension of automatic stay appropriate where non-debtors were "heavily involved" in reorganization, discovery would burden non-debtors and debtor, and defense of actions would detract from non-

debtors' reorganization efforts and hinder debtor's ability to "emerge successfully from bankruptcy under a confirmed plan of reorganization").

27.     Therefore, Point Blank is the real party defendant in the State Court Action, an "identity of interest" exists between Point Blank and Mr. Henderson, and stay protection is essential to Point Blank's reorganization efforts.  As a result, an extension of the automatic stay is warranted in this case because permitting the State Court Action to continue would directly affect Point Blank, its assets and its ability to pursue a successful plan of reorganization, and would allow Defendants to complete an "end around" the protections afforded to Point Blank under 11 U.S.C. § 362(a)(1).

II.     **The State Court Action Should Be Stayed Under 11 U.S.C. § 362(a)(3) Because The Claims Asserted In The State Court Action Are Property Of Point Blank's Estate**

   A.     **The Claims Asserted In The State Court Action, To The Extent Such Claims May Be Stated, Are Derivative Claims**

28.     The claims asserted by Defendants in the State Court Action, to the extent such claims may be stated at all, are derivative claims that are property of Point Blank's bankruptcy estate.  The question of whether claims are direct or derivative is governed by the law of the state of incorporation of the corporation on whose behalf the derivative claims are asserted.  *See In re At Home Corp.*, 154 F. App'x. 666, 668 (9th Cir. 2005) ("Because At Home is a Delaware corporation, the scope of the debtor's property is determined by Delaware law.").  Point Blank is a Delaware corporation, and Delaware law therefore governs whether Defendants' purported claims against Mr. Henderson are direct or derivative.

29.     The leading case on whether claims are direct or derivative under Delaware law is *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004).

-18-

Under *Tooley*, a determination of whether a claim is direct or derivative turns solely on the

following two questions: (1) who suffered the alleged harm (the corporation or the suing

stockholder, individually); and (2) who would receive the benefit of any recovery or other

remedy (the corporation or the stockholder, individually). 845 A.2d at 1033. The Delaware

Supreme Court in *Tooley* stated:

> The stockholder's claimed direct injury *must be independent of any*
> *alleged injury to the corporation.* The stockholder must
> demonstrate that the duty breached was owed to the stockholder
> and that he or she can prevail *without showing an injury to the*
> *corporation.*

845 A.2d at 1039 (emphasis added). To determine if a stockholder can prevail without showing

an injury to the corporation, a court must look to "the body of the complaint, not the plaintiff's

designation or stated intention." *Agostino v. Hicks*, 845 A.2d 1110, 1121-22 (Del. Ch. 2004).

      30.     As the Fifth Circuit has written when applying Delaware law and

considering whether claims brought by a shareholder in a corporation were direct or derivative:

> [T]he misconduct alleged by [the plaintiff] did not injure [the
> plaintiff] or any other shareholders directly, but instead only
> injured them indirectly as a result of their ownership of [the
> corporation's] shares. As such, [the plaintiff] cannot prove his
> injury without also simultaneously proving an injury to the
> corporation. Accordingly, in light of *Tooley*, we find that [the
> plaintiff's] claims are derivative under Delaware law.

*Smith v. Waste Mgmt., Inc.*, 407 F.3d 381, 385 (5th Cir. 2005). The Fifth Circuit further held:

> Our conclusion [that the plaintiff's claims are derivative] is
> reinforced by the fact that if [the plaintiff's] were construed as
> direct rather than derivative, [the plaintiff] would be allowed to
> benefit (by obtaining a judgment against [the corporation]) *at the*
> *expense of all other shareholders who are similarly situated.* That
> is, [the plaintiff] would be allowed to recover the full amount of
> his losses from the diminished assets of [the corporation], while
> similarly situated shareholders would not. *By finding that [the*
> *plaintiff's] claims are derivative, we ensure that [the plaintiff] will*

-19-

> *not incur a benefit at the expense of other shareholders similarly situated.*

*Id.* (emphasis added); *see also Agostino v. Hicks*, 845 A.2d at 1123 n.60 ("[W]here a plaintiff shareholder claims that the value of his stock will deteriorate and that the value of his proportionate share of the stock will be decreased as a result of alleged director mismanagement, his cause of action is derivative in nature.") (quotation omitted).

31. In the State Court Complaint, Defendants allege that Mr. Henderson breached his fiduciary duties to Point Blank and its shareholders by "failing to cause [Point Blank] to undergo financial audits over the past two years and to make its required public filings as a registered company under the federal securities laws." *Id.* at ¶ 1. Defendants also challenge the decision to de-register Point Blank as a public company, which as discussed above was authorized by this Court pursuant to the SEC Order. *Id.* at ¶¶ 24-26. Moreover, Defendants challenge Point Blank's proposed Plan, alleging that Point Blank's failure to make its SEC filings since 2009 and subsequent de-registration are "part of an ongoing plan to leave [Point Blank] with no alternative but to accept a proposed 'going private' acquisition" of Point Blank. *Id.* at ¶¶ 2, 28-29. Finally, Defendants allege that the "shareholders' realization that [Point Blank] is pursuing the path of de-registration ... has already depressed the value of [Point Blank's] stock price ..." *Id.* at ¶ 37.

32. Defendants' alleged injury is dependent on the alleged injury to Point Blank. In other words, Defendants cannot prevail on the claims asserted in the State Court Action without showing an injury to Point Blank as a result of Mr. Henderson's alleged breach of his fiduciary duties. As in *Smith*, the misconduct alleged by Defendants did not injure

-20-

Defendants or any other shareholders directly, but instead only injured them (if at all) indirectly as a result of their ownership of Point Blank's shares. Therefore, under the controlling analytical test promulgated in *Tooley*, the claims asserted in the State Court Action are derivative and, as discussed below, are property of Point Blank's bankruptcy estate.

**B.** **The Derivative Claims Are Property Of Point Blank's Bankruptcy Estate And Thus Are Protected By The Automatic Stay Under 11 U.S.C. § 362(a)(3)**

33.     Upon the filing of a bankruptcy petition, any claims for injury to the debtor from actionable wrongs committed by the debtor's officers and directors become property of the estate under 11 U.S.C. § 541, and the right to bring a derivative action asserting such claims vests exclusively to the trustee or debtor in possession. *In re RNI Wind Down Corp.*, 348 B.R. 286, 293 (Bankr. D. Del. 2006) *subsequently aff'd*, 359 F. App'x. 352 (3d Cir. 2010). "This is true regardless of whether the derivative action [was] brought prior to or after the filing of the petition." *Id.*

34.     Thus, the derivative claims asserted in the State Court Action are property of Point Blank's bankruptcy estate, and Point Blank has exclusive standing to assert such claims. Because the claims Defendants assert against Mr. Henderson in the State Court Action are derivative claims that belong to Point Blank's estate, the issuance of an injunction barring Defendants' prosecution of the State Court Action is warranted under 11 U.S.C. § 362(a)(3).[6] *See, e.g., In re At Home Corp.*, 154 F. App'x. at 668 (under 11 U.S.C. § 362(a)(3), bankruptcy court may enjoin derivative claim brought by shareholders because claim is the property of the

---

[6] Under section 362(a)(3) of the Bankruptcy Code, the filing of a bankruptcy petition operates as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

bankrupt estate); *In re All Am. of Ashburn, Inc.*, 805 F.2d 1515, 1517-18 (11th Cir. 1986) (enjoining shareholders from bringing derivative claims that were property of debtor's estate).

**III.    The State Court Action Should Be Enjoined Under 11 U.S.C. § 105(a)**

    **A.    An Injunction Barring Further Prosecution Of The State Court Action Is Authorized Under 11 U.S.C. § 105(a)**

    35.    Assisting a debtor in its reorganization efforts is "one of the paramount interests" of a bankruptcy court. *In re Am. Film Technologies, Inc.*, 175 B.R. at 849. In furtherance of this paramount interest, bankruptcy courts have looked to their broad equitable powers under section 105(a) of the Bankruptcy Code to enjoin actions in other courts that would impair a debtor's successful reorganization.[7] *See id.* at 855 (enjoining state court action against debtor's present and former directors pursuant to 11 U.S.C. § 105(a)); *In re Television Studio School of New York*, 77 B.R. 411, 413 (Bankr. S.D.N.Y. 1987) (enjoining postpetition action against debtor pursuant to 28 U.S.C. § 959(a) and 11 U.S.C. § 105(a)). Indeed, the "reach of bankruptcy jurisdiction encompasses all matters the outcome of which could affect the debtor or its reorganization." *In re Ionosphere Clubs, Inc.*, 111 B.R. 423, 430 (Bankr. S.D.N.Y. 1990) *aff'd in part sub nom. In re Ionosphere Clubs Inc.*, 124 B.R. 635 (S.D.N.Y. 1991) (quotation omitted); *see also In re AP Indus., Inc.*, 117 B.R. 789, 801 (Bankr. S.D.N.Y. 1990) (bankruptcy court may use its equitable powers under 11 U.S.C. § 105(a) "to assure the orderly conduct of the reorganization proceedings") (quotation omitted). Thus, section 105(a) of the Bankruptcy Code authorizes the issuance of an injunction barring further prosecution of the State Court Action

---

[7] Section 105(a) of the Bankruptcy Code provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

because, as discussed below, further prosecution of the State Court Action will directly affect

Point Blank, its assets and its ability to pursue a successful plan of reorganization.

**B.     An Injunction Barring Further Prosecution Of The State Court Action Is Warranted Under 11 U.S.C. § 105(a)**

36.     Bankruptcy Rule 7065 provides for the issuance of preliminary injunctions

in adversary proceedings.  In the Third Circuit, courts consider the following factors to determine

whether a preliminary injunction should issue under section 105(a) of the Bankruptcy Code:

> (1) whether the movant has shown a reasonable probability of
> success on the merits;
>
> (2) whether the movant will be irreparably injured by denial of the
> relief;
>
> (3) whether granting preliminary relief will result in even greater
> harm to the nonmoving party; and
>
> (4) whether granting the preliminary relief will be in the public
> interest.

*Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 1999) (citations omitted); *see*

*also In re Am. Film Technologies, Inc.*, 175 B.R. at 849.  Application of each of these factors in

this case demonstrates that an injunction barring further prosecution of the State Court Action is

appropriate under section 105(a) of the Bankruptcy Code.

**(i)     Point Blank Has A Reasonable Probability Of Success On The Merits And Will Be Irreparably Injured By Denial Of The Preliminary Injunction**

37.     In the context of enjoining litigation against a non-debtor, "[t]he elements

of probable success on the merits and irreparable harm ... are essentially a matter of whether [the

debtor] would be seriously adversely affected" if the proceeding against the non-debtor is not

enjoined.  *In re Am. Film Technologies, Inc.*, 175 B.R. at 849.  In this case, injunctive relief

-23-

pursuant to 11 U.S.C. § 105(a) is warranted because further prosecution of the State Court Action will irreparably harm Point Blank and its efforts to pursue a successful plan of reorganization.

38.     Further prosecution of the State Court Action will irreparably harm Point Blank because the State Court Action, in effect, seeks a "do-over" of this Court's authorization of the SEC settlement. The claim for breach of fiduciary duty asserted in the State Court Action depends in part upon the decision to de-register Point Blank as a public company, despite the fact that Point Blank's de-registration was authorized by this Court in the SEC Order. *See* State Court Complaint at ¶¶ 24-26. Point Blank will suffer irreparable harm if the State Court Action is not enjoined because Defendants seek relief in the State Court Action – namely, a judgment that the decision to de-register Point Blank constituted a breach of Mr. Henderson's fiduciary duty to Point Blank and its shareholders – that would be in direct conflict with this Court's prior order authorizing Point Blank's de-registration.

39.     Defendants also challenge Point Blank's proposed Plan, alleging that Point Blank's failure to make its SEC filings since 2009 and subsequent de-registration are "part of an ongoing plan to leave [Point Blank] with no alternative but to accept a proposed 'going private' acquisition" of Point Blank. State Court Complaint ¶¶ 2, 4, 28-29. The State Court Action essentially seeks a judgment from the New York State Court that Point Blank's proposed Plan cannot be confirmed. Defendants' objections to the proposed Plan, however, should be raised in this Court during the plan confirmation process. Indeed, the plan confirmation process in this Court – not the State Court Action – is the only appropriate time and forum for Defendants to assert their objections to the proposed Plan. Thus, without an injunction, Point Blank will suffer

-24-

irreparable harm because permitting the State Court Action to proceed against Mr. Henderson will allow Defendants to circumvent the plan confirmation process and will impede Point Blank's reorganization.

40.     Injunctive relief also is warranted in this case because further prosecution of the State Court Action will distract Mr. Henderson from Point Blank's reorganization, and thus irreparably harm Point Blank. *See, e.g., In re Television Studio School of New York*, 77 B.R. at 413 (enjoining postpetition action against debtor where debtor had filed a plan and obtained a hearing date for its disclosure statement, because debtor's management "would be forced to divert its attention away from the reorganization process to focus on defending [the] lawsuit"); *see also In re Cont'l Airlines*, 177 B.R. at 481 (citing in support of extension of automatic stay to non-debtor officers and directors the fact that officers and directors were "heavily involved" in reorganization efforts, such that defense of suit against non-debtors would hinder debtor's "ability to emerge successfully from bankruptcy under a confirmed plan of reorganization"). As discussed above, Mr. Henderson occupies a critical role in the continued operation and management of Point Blank's business, and is heavily involved in all aspects of Point Blank's complex bankruptcy case. Mr. Henderson's undivided attention is essential to Point Blank's reorganization, particularly at this stage of the bankruptcy proceedings, because Mr. Henderson is vital to Point Blank's efforts to amend the Plan and obtain exit financing to support the Plan. Thus, as in *Television Studio School of New York*, an injunction is warranted because prosecution of the State Court Action would burden Mr. Henderson and "divert [his] attention away from the reorganization process to focus on defending" the State Court Action.

-25-

41.     Point Blank and its reorganization efforts also will suffer irreparable harm

if the State Court Action is not enjoined because Point Blank will be forced to analyze,

investigate and potentially litigate the State Court Action in order to (a) protect Point Blank's

interests in the derivative claims, which as discussed above are property of Point Blank's

bankruptcy estate and (b) protect against the risk that Point Blank could be collaterally estopped

in subsequent litigation from relitigating issues determined against Mr. Henderson in the State

Court Action. *See, e.g., In re Am. Film Technologies, Inc.*, 175 B.R. at 850 (enjoining claims

against directors in part because debtor faced risk of "being collaterally estopped from denying

liability for its directors' actions").  As a result, unless the State Court Action is enjoined, Point

Blank's resources – including its limited funds and the time and attention of Mr. Henderson,

Point Blank's other key personnel (who may be called upon to respond to subpoenas, attend

depositions and even testify at trial in the State Court Action) and Point Blank's bankruptcy

counsel – will be diverted away from Point Blank's reorganization to the State Court Action.

42.     Finally, further prosecution of the State Court Action will irreparably

harm Point Blank because, as discussed above, Mr. Henderson has indemnification and

advancement rights against Point Blank pursuant to Point Blank's Certificate of Incorporation

and Point Blank's Bylaws, which may be implicated in the State Court Action.  Although Mr.

Henderson also has rights to coverage under Point Blank's Primary Policy, it is not clear what

position Point Blank's insurer will take regarding whether (a) coverage is available in connection

with the State Court Action or (b) any coverage available in connection with the State Court

Action is subject to the $500,000 retention applied to Point Blank's coverage under the Primary

Policy (given that Point Blank is the real party defendant in the State Court Action).  Point

-26-

Blank's indemnification and advancement obligations to Mr. Henderson would be a significant drain on Point Blank's already limited resources and would impair Point Blank's reorganization efforts. *See In re Am. Film Technologies, Inc.*, 175 B.R. at 851-52 (enjoining state court action against debtor's present and former directors based in part on debtor's potential indemnification obligations to directors).

43.     Thus, Point Blank and its reorganization efforts will suffer irreparable harm if the State Court Action is not enjoined because: the State Court Action seeks a judgment from the New York State Court that would directly conflict with this Court's SEC Order; the State Court Action is an attempt to circumvent the plan confirmation process in this Court; and the financial and human resources Point Blank requires to pursue a successful plan of reorganization will be diverted from reorganization to the State Court Action, and potentially to the satisfaction of Point Blank's indemnification and advancement obligations to Mr. Henderson. The injunctive relief requested in the Motion is therefore both necessary and appropriate under section 105(a) of the Bankruptcy Code.

**(ii)     A Preliminary Injunction Will Not Harm Defendants**

44.     Defendants will not suffer any harm if prosecution of the State Court Action is enjoined until further order of this Court. The State Court Complaint is, in essence, an objection to Point Blank's proposed Plan. Thus, Defendants will have an opportunity to advance the arguments asserted in the State Court Action in connection with the plan confirmation process in this Court. In fact, the plan confirmation process in this Court is the only appropriate time and forum for Defendants to assert their objections to the Plan.

-27-

45. Moreover, as discussed in detail below, Defendants have no right or standing to bring the claims asserted in the State Court Action, because such claims are derivative claims that are property of Point Blank's bankruptcy estate. Therefore, enjoining prosecution of the State Court Action will not harm Defendants.

### (iii) Granting The Preliminary Injunction Will Be In The Public Interest

46. "In the context of a bankruptcy case, promoting a successful reorganization is one of the most important public interests." *In re Integrated Health Services, Inc.*, 281 B.R. 231, 239 (Bankr. D. Del. 2002) (citing *In re Am. Film Technologies, Inc.*, 175 B.R. at 849). In this case, as discussed above, injunctive relief is necessary and appropriate because further prosecution of the State Court Action will irreparably harm Point Blank and its reorganization efforts. Therefore, an injunction is warranted because enjoining the State Court Action will serve the important public interest of promoting Point Blank's successful reorganization.

### C. No Bond Or Other Security Should Be Required In This Case

47. Bankruptcy Rule 7065 expressly exempts the security requirement of Federal Rule of Civil Procedure 65. *See* Fed. R. Bankr. P. 7065. In particular, Bankruptcy Rule 7065 provides that no security is required for a debtor in possession, such as Point Blank, to obtain a preliminary injunction absent an order specifically requiring such security. In the instant case, Point Blank should not be required to post a bond or other security as a condition of the injunctive relief it seeks.

## Conclusion

48.     For the foregoing reasons, Point Blank respectfully requests that the Court

enter an order preliminarily enjoining and staying further prosecution of the State Court Action

against Mr. Henderson, and grant such other and further relief as the Court deems just and

proper.

Dated: April 8, 2011

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
Alan J. Kornfeld (CA Bar No. 130063)
David Bertenthal (CA Bar No. 167624)
Curtis A. Hehn (Bar No. 4264)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Email: ljones@pszjlaw.com
          akornfeld@pszjlaw.com
          dbertenthal@pszjlaw.com
          chehn@pszjlaw.com
          tcairns@pszjlaw.com

Counsel to Plaintiff Point Blank Solutions Inc.

-29-